OPINION OF THE COURT
Harold Baer, Jr., J.
This is a motion by the defendant Lynbrook Gardens Company (Lynbrook) for summary judgment, or, alternatively, for a change of venue to Nassau County. The motion for summary judgment is denied in part and granted in part. The change of venue motion is denied; an action for specific performance of a contract for sale of shares in a cooperative apartment is not within the scope of CPLR 507.
This action arises out of a cooperative apartment conversion and a contract to purchase an apartment, between Lynbrook as seller and plaintiff, buyer. On May 13,1983, Lynbrook received a proposed contract of sale from plaintiff at the insider’s price of $24,030.40. Apparently, Lynbrook was unsatisfied with the offer, countered by refusing to sign any contract unless the purchase price was $26,780.40. On May 25, 1983, plaintiff signed the contract for the higher sum. This contract required plaintiff to pay a 10% down payment on execution. In return, Lynbrook agreed to sell and transfer to plaintiff (1) 192 shares of the corporation allocated to her apartment and (2) the seller’s interest in the apartment’s proprietary lease.
*407 Two checks tendered by plaintiff as the down payment were returned for insufficient funds. According to the plaintiff, the checks were redeposited and cleared; according to Lynbrook, after redepositing the checks and more bouncing, plaintiff was still short approximately $600 from the required 10% down payment.
On July 6, 1983, the closing date, plaintiff was unable to go forward with the closing because she had not yet obtained a mortgage commitment through no fault of her own, she asserts. Lynbrook notified plaintiff that it considered her in default and, pursuant to the contract’s liquidated damages clause, was keeping her down payment. Subsequent correspondence and alleged telephone conversations, however, raise an issue as to whether or not Lynbrook, through its agents, waived the default.
Thereafter, plaintiff commenced this action seeking to rescind for fraud, reinstate the May 25,1983 contract, to require performance on the May 13th executory contract (the first and second causes of action), to order Lynbrook to sell plaintiff a comparable cooperative apartment (fourth cause of action), or, alternatively, for damages arising from Lynbrook’s breach of contract (cause of action five) and for fraud (causes of action six and seven).
Let us turn first to the motion for summary judgment, such motions concern issue finding, rather than issue determining. Whether or not plaintiff paid the down payment, as she claims, and, if so, when, and whether or not Lynbrook, through its agents, waived the closing date and agreed to reschedule it for a later date are all unresolved issues. Therefore the motion for summary judgment as to these issues and more particularly the second and fifth causes of action seeking specific performance or damages must be denied. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].)
Turning to the fraud claims, they are inadequately alleged. While plaintiff may have felt herself the victim of unfair bargaining, the facts she recites draw little more than a picture of a seller standing fast to obtain his price; hard bargaining maybe, but not fraud.
Accordingly, the motion for summary judgment is denied with respect to causes of action two and five, and granted with respect to the causes of action alleging fraud, i.e., one, four, six and seven, and, too, with respect to the third cause of action which is concededly moot.
Turning to the motion to change the venue of this action to Nassau County, CPLR 507 provides: “The place of trial of an action in which the judgment demanded would affect the title to, *408 or the possession, use or enjoyment of, real property shall be in the county in which any part of the subject of the action is situated.” Lynbrook argues that the contract provided that Lynbrook sell shares and transfer its interest in the leasehold, and this action to compel specific performance of the contract necessarily affects the possession, use or enjoyment of real property.
The ownership interest of a tenant shareholder in a cooperative apartment building is sui generis. (Matter of State Tax Commn. v Shor, 43 NY2d 151 [1977].) The effort by some courts to isolate the components of the cooperative interest and then classify the whole by reference to its parts has drawn criticism from commentators. (E.g., Note, Legal Characterization of the Individual’s Interest in a Cooperative Apartment: Realty or Personalty?, 73 Colum L Rev 250, 260-262 [1973]; but see, 2 Rohan and Reskin, Cooperative Housing, Law and Practice § 1.03 [1984].) Relatively recent decisions have examined the subject matter of the action and determined whether the subject matter deserved to be classified as realty or personalty. For example, shares of cooperative stock were held to be personalty rather than realty within the scope of UCC article 2 and a down payment for those shares is not forfeited in the absence of a liquidated damages clause. (Silverman v Alcoa Plaza Assoc., 37 AD2d 166 [1st Dept 1971].) A judgment debtor’s interest in his cooperative apartment has been held not to be real property or an interest in a chattel real within the meaning of CPLR 5203 governing the priority of liens on real property. (Matter of State Tax Commn. v Shor, supra.)
For other purposes, the cooperative interest is treated as real property. For example, cooperatives are deemed realty under the Federal securities laws (United Hous. Found, v Forman, 421 US 837 [1975]) and under State and Federal tax laws (Internal Revenue Code §§ 216,1034; 26 USC §§ 216,1034; Tax Law § 360 [12]). The Statute of Frauds, as it relates to contracts for real property, applies to the sale of stock in a housing cooperative. (Lebowitz v Mingus, 100 AD2d 816 [1st Dept 1984]; Rosner v 80 CPW Apts. Corp., 73 AD2d 39 [1st Dept 1980].)
The genesis of the real property venue provision (CPLR 507) is grounded in the need for jurors to have personal knowledge of the facts in dispute. This need led to the rule that actions must be brought where the event occurred or the subject of the action was located. (See, Livingston v Jefferson, 15 Fed Cas No. 8,411, pp 660, 663 [Cir Ct, Dist Va 1811, Marshall, Cir J.].) With respect to real property, actions involving title or injury to *409 realty were required to be brought where the real property was located. Even today, the requirement remains useful. Title records, when on file, can assist the court in the resolution of disputes affecting real property. For example, in an action for trespass on land, legal descriptions of a property contained in a recorded deed or survey will aid the court, sitting in the county where the property is located, in determining the issue of trespass.
As one court noted: “Trial in the county of the realty is favored ‘[i]n the interest of orderly procedure and for the sake of facility and certainty in title records.’” (See, Craig v Clifton Springs Country Club, 26 AD2d 903 [4th Dept 1966], quoting Reichenbach v Corn Exch. Bank Trust Co., 249 App Div 539, 541 [1st Dept 1937].)
By the same token, if there is no requirement that title be filed with the county clerk, there is little purpose in requiring that an action affecting such property’s title be brought where the property is located.
Juxtaposing the purpose of the real property venue provision, with the issue to be decided here, an action for specific performance of a contract for the sale of shares in a cooperative apartment is not within the scope of CPLR 507. The contract and sale have no effect on title records and no recording of a mortgage or deed is permitted in the sale of a cooperative interest, as it would be in the case of a mortgage or deed to real property. (See, 4B Powell, Real Property [Rohan rev ed] 1Í 633.51 [3]; Banking Law § 235 [8] [1] [a]; cf. RPAPL 1331,1401.) Concomitantly, no mortgage filing tax is imposed. (Cf. Tax Law §§ 253, 253-a.)
Defendant, however, has another string to his bow, claiming that CPLR 507 is not limited to actions involving title, but applicable where the judgment demanded would affect “the possession, use or enjoyment of, real property”. A similar argument has been advanced, and rejected, by the courts in disputes involving the doctrine of lis pendens.
A notice of pendency (as it is now called) may be filed in the clerk’s office in the county in which “the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property.” (CPLR 6501.) The practical consequence of CPLR 6501, coupled with the real property venue provision, is that a prospective buyer interested in purchasing certain property, need only search the records on file in the county in which the realty is located to determine whether or not there is an action pending against the property. Any other procedure, short of *410 checking the records of each county within the State, would leave a buyer uncertain as to the status of the realty.
The Court of Appeals recently expressly left open the question whether a suit to specifically perform a contract for the sale of shares in a cooperative apartment will support the filing of a notice of pendency (5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313, 323, n 7).
At nisi prius, however, a notice of pendency was vacated in an action for specific performance of sale of shares of a cooperative apartment since those shares are personal and not real property. (La Shannon v Grinnell Hous. Dev. Fund, Sup Ct, NY County, Oct. 22, 1984, index No. 10442/84.) Similarly, where the plaintiff sought to compel defendants to issue shares of stock and a proprietary lease in a cooperative apartment alleging he was fraudulently induced to enter into an assignment of his subscription agreement, the court vacated the notice of pendency on the ground that the shares of cooperative stock were personalty and thus not a right, title or interest in the property that CPLR 6501 was enacted to preserve. (Shapiro v 420 E. Assoc., NYLJ, June 27, 1984, p 7, col 1 [Sup Ct, NY County]; see also, Genesis Mgt. Corp. v Silver, NYLJ, Nov. 16,1983, p 6, col 4 [Sup Ct, NY County]; Gyuarek v 103 E. 10th Owners Corp., NYLJ, Feb. 6, 1985, p 12, col 1 [Sup Ct, NY County]; but see, Lawlor v Densmore-Compton Bldg. Co., 60 Misc 555 [Sup Ct, NY County 1908], affd 133 App Div 896 [1st Dept 1909].)
Thus, despite the seemingly generous language in CPLR 6501 (including “use or enjoyment” — which language is identical to that of CPLR 507), these courts have, in effect, held that a notice of pendency cannot be used where the party filing does not have a right, title or interest in the property itself. (See, Braunston v Anchorage Woods, 10 NY2d 302 [1961].)
Similarly, a narrow construction of CPLR 507 will harmonize the application of these two statutory provisions.
Another reason may be advanced for treating as transitory actions for specific performance of contracts for the sale of cooperative apartments. As the court noted in 5303 Realty (supra, pp 324-325): “One of this court’s paramount goals is to formulate equitable, stable rules by which individuals can reliably order their affairs.” By highlighting the personal property aspect of the cooperative interest, at least for purposes of venue, the distinctions between the cooperative and condominium forms of ownership may be relied on and preserved. Presently, the statutory scheme recognizes and supports such a distinction. Condominium ownership is, by statute in New York, directly *411 related to real property and the consequences flowing from that statute — recordation of deeds, etc. — set it apart from the consequences of the cooperative form of ownership. {See, Real Property Law § 339-g et seq.)
Having determined that the cause of action is transitory, the designation for venue purposes of New York County, the principal office of the corporation, is appropriate.
Accordingly, the motion for a change of venue to Nassau County is denied.