Douglas B. FIRESTONE and Amy Firestone Del Valle, Plaintiffs,

v.

Daniel M. GALBREATH, Individually, as Executor of the Estate of Dorothy B. Galbreath, as Trustee of the Dorothy Bryan Galbreath Family Trust, u/a dated October 31, 1978, and (with Joan Galbreath Phillips) doing business as Darby Dan Farm, the Estate of John W. Galbreath, by Daniel M. Galbreath, Executor, the John W. Galbreath Trust, u/a dated June 10, 1976, by Daniel M. Galbreath, Trustee, John W. Galbreath's Darby Dan Farm Trust, u/a dated June 10, 1976, by Daniel M. Galbreath, Trustee, Joan Galbreath Phillips, Individually and (with Daniel M. Galbreath) doing business as Darby Dan Farm, James W. Phillips, John W. Phillips, Lizanne Galbreath, John W. Galbreath & Co., Inc., Galbreath–Ruffin Corporation, Akron Redevelopment Corporation, Bricker & Eckler, John Eckler, David C. Cummins, Charles H. Waterman, III, Bolon, Hart & Buehler, Inc., Dolorees I. Dutoit, River House Realty Co., Inc., the Jockey Club, Inc., Andrew P. Firestone, Leigh E. Firestone, Mark Firestone, Russell A. Firestone, III, David M. Firestone, Jr., Jeffrey Firestone, Deborah Lynn Firestone and Cindy Graham, Defendants.

No. 88 Civ. 8631 (LLS).

United States District Court,
S.D. New York.

Sept. 27, 1989.

---

Milbank, Tweed, Hadley & McCloy (Edward H. Reilly, of counsel), New York City, for plaintiffs.

Leboeuf, Lamb, Leiby & MacRae (Frederick B. Lacey, Bradley Hummel, Robert M. Kincaid, Jr., John F. Winkler, Baker & Hostetler, Columbus, Ohio, of counsel), New York City, for Daniel M. Galbreath, et al.

Patterson, Belknap, Webb & Tyler (Philip Forlenza, Robert D. Orlin, David A. Kissinger, Squire, Sanders & Dempsey, Columbus, Ohio, of counsel), for defendants Bricker & Eckler, John Eckler, David C. Cummins, John W. Phillips and Charles H. Waterman III.

Siff, Rosen & Parker, P.C. (Louis G. Adolfsen, of counsel), New York City, for defendant Bolon, Hart & Buehler, Inc.

Liddle, O'Connor, Finkelstein & Robinson, New York City, for defendants Jeffrey Firestone and David M. Firestone, Jr.

Joan E. O'Dell, Washington, D.C., for defendant Russell A. Firestone III.

## OPINION and ORDER

STANTON, District Judge.

Various defendants move to dismiss or transfer this action to the United States

District Court for the Southern District of Ohio, Eastern Division. The motions to transfer are granted.

## BACKGROUND

This case concerns the estate of Dorothy Firestone Galbreath. Plaintiffs, two of Mrs. Galbreath's grandchildren from her first marriage, claim that Mrs. Galbreath's second husband and some of his family members wrongfully used or transferred her property to themselves, or to entities they owned, at a time when Mrs. Galbreath lacked mental capacity to understand or approve such transactions. The following background descriptions primarily summarize assertions in the complaint, a document of some 115 pages.

### 1. Dorothy Galbreath

In 1925 Dorothy Bryan married Russell A. Firestone. Mr. Firestone's father was the founder of the Firestone Tire & Rubber Company ("Firestone Tire"), of which Mr. Firestone was a director. The Firestones were horse raising enthusiasts and breeders of thoroughbred horses; Mr. Firestone was a director of The Jockey Club, Inc., the Saratoga Association, and the racetrack in Hialeah, Florida. The Firestones had two children, Russell, Jr. and Morgan. When he died in 1951, Mr. Firestone left his widow shares in Firestone Tire, and numerous thoroughbred horses.

In 1955 Dorothy Bryan Firestone married John W. Galbreath. Mr. Galbreath was the founder, chairman, and principal shareholder of John W. Galbreath & Co., Inc., former chairman and a principal shareholder of Galbreath–Ruffin Corporation, and president of Akron Redevelopment Corporation. He had residences in New York City, Saratoga Springs, New York, Miami Beach, Florida, and Ohio. Mr. Galbreath had two children, Daniel M. Galbreath and Joan Galbreath Phillips, by a previous marriage. Dorothy and John Galbreath did not have any children together.

Like his second wife, Mr. Galbreath was a horse enthusiast. He owned Darby Dan Farm, a horse breeding, training and racing operation in Kentucky, to which Dorothy Galbreath's horses were taken after their marriage.

In July 1978 Dorothy Galbreath was diagnosed as having temporal arteritis. She was hospitalized, and then given steroids. Readmitted to a hospital in Ohio for two weeks in January 1979, she was diagnosed as having probable cerebral atrophy, a condition akin to presenile dementia.

Mrs. Galbreath spent the next several months in Florida, where she was regularly visited by her physician, Dr. Jean Jones Perdue. She returned to Ohio in April 1979, and soon was back in the hospital for about three months.

In October 1979 Mrs. Galbreath developed severe herpes zoster with brain involvement. Again she entered the hospital, and stayed about two months.

According to the complaint, Mrs. Galbreath's physical, mental and psychological condition deteriorated rapidly after July 1978, and defendants took advantage of her impaired mental functioning to transfer portions of her property to themselves, charge their expenses to her accounts, and deplete her estate.

Mrs. Galbreath died in Miami Beach, Florida on February 24, 1986. Her second husband, John W. Galbreath, died on July 20, 1988.

### 2. The October 31, 1978 Will and the Dorothy Bryan Galbreath Family Trust

On October 31, 1978 Dorothy Galbreath established an inter vivos trust (the "Family Trust"). The Family Trust provides that upon her death, its assets are to be divided equally into individual trusts for each of her grandchildren by Mr. Firestone, including plaintiffs.

Mrs. Galbreath on October 31, 1978 also executed a Last Will and Testament (the "Will"). Under the Will, the Family Trust receives the residue of her estate. According to the complaint, because of the challenged inter vivos transfers, and bequests under the Will, there are no assets in Dorothy Galbreath's estate to fund the Family Trust.

The Will is the subject of a will contest commenced by plaintiff Douglas Firestone, and joined by plaintiff Amy Firestone del Valle, pending in the Probate Court of Franklin County, Ohio.

### 3. The Parties

Plaintiffs Douglas B. Firestone and Amy Firestone del Valle are two of Dorothy Galbreath's grandchildren. Both of them reside in California. Each is a beneficiary of the Family Trust. Amy also receives a specific bequest under the Will.

Among the defendants are certain relatives of John W. Galbreath, his estate and two trusts he established (The John W. Galbreath Trust, and John W. Galbreath's Darby Dan Farm Trust), various Galbreath entities, advisers and employees, The Jockey Club, Inc., River House Realty, Inc., and Mrs. Galbreath's remaining grandchildren from her marriage to Russell Firestone, as follow:

#### a. *Galbreath family members: Daniel M. Galbreath, Joan Phillips, James W. Phillips, and Lizanne Galbreath*

Daniel M. Galbreath, Mr. Galbreath's son and Mrs. Galbreath's stepson, is a citizen of Ohio and has residences in Manhattan and Saratoga Springs, New York. He is the executor of both Dorothy Galbreath's and John W. Galbreath's estates, a beneficiary under the Will, and trustee of the Family Trust as well as of the two trusts established by John Galbreath. He holds positions similar to his father's: president and shareholder of John W. Galbreath & Co., Inc.; president, chairman and principal shareholder of Galbreath–Ruffin Corp.; and vice president of Akron Redevelopment Corp.

Daniel and his sister, Joan Galbreath Phillips, operate Darby Dan Farm. Joan is a principal shareholder of Galbreath–Ruffin Corp., and a beneficiary under the Will. Joan's husband is James W. Phillips, secretary of John W. Galbreath & Co. Both are citizens of Ohio.

Daniel's daughter, Lizanne Galbreath, is a director and employee of Galbreath–Ruffin Corp. She lives at Apartment 10G in the River House at 435 East 52nd Street in Manhattan, an apartment originally owned by Dorothy Galbreath.

#### b. *Galbreath entities*

John W. Galbreath & Co., Inc. is an Ohio corporation which has an office in New York City, where it owns or manages several office buildings. Galbreath–Ruffin Corp. is a New York corporation which also owns several New York office buildings. Akron Redevelopment Corp. is an Ohio corporation. All the stock of the first two companies is owned or controlled by John Galbreath's estate and trusts and Galbreath family members; Akron Redevelopment Corp. is wholly owned by Galbreath family members or interests.

#### c. *Galbreath advisers and employees*

Bricker & Eckler is a law firm in Columbus, Ohio which performs legal services for the Galbreath family. Bricker & Eckler prepared the Will and the Family Trust documents. It represents both John Galbreath's and Dorothy Galbreath's estates, as well as Daniel Galbreath in his roles as executor of each estate and as trustee of the various trusts. It does not have a New York office. John Eckler, David C. Cummins, Charles H. Waterman, III, and John W. Phillips all reside in Ohio and are all partners of the firm. John W. Phillips, the son of Joan and James Phillips, provides legal services and management assistance for Darby Dan Farm.

Bolon, Hart & Buehler, Inc. ("Bolon Hart") is an accounting firm in Columbus, Ohio which performs accounting services for the Galbreath family and the Galbreath entities. It does not have a New York office.

Dolorees I. Dutoit is a citizen of Ohio who worked for Mr. Galbreath and various Galbreath entities for 60 years. She was Dorothy Galbreath's financial secretary from 1955 until Mrs. Galbreath's death.

#### d. *The Jockey Club, Inc. and River House Realty Co., Inc.*

The Jockey Club, Inc. ("Jockey Club") has its principal place of business in New

York City, but maintains its racing and breeding records in Lexington, Kentucky. It has sole responsibility in the United States for registering thoroughbreds, partnerships, stable names, horse names, and authorized agents, and its membership consists of thoroughbred owners and breeders. Darby Dan Farm is registered with the Jockey Club as a trade name.

River House Realty Co., Inc. ("River House Realty") owns and manages a cooperative building located at 435 East 52nd Street in New York City, where Dorothy Galbreath owned an apartment.

### e. *Dorothy Galbreath's grandchildren*

Andrew P. Firestone, Leigh E. Firestone, Mark Firestone, Russell A. Firestone, III, David M. Firestone, Jr., and Jeffrey Firestone are grandchildren of Dorothy Galbreath and Russell Firestone, and beneficiaries of the Family Trust. Two of them live in Texas, and the others reside in California, Florida, the District of Columbia or Maryland. Deborah Lynn Firestone and Cindy Graham, residents of Canada, also claim to be beneficiaries of the Family Trust.

### 4. The Contested Transfers

#### a. *River House apartment*

At the time of her marriage to John Galbreath, Dorothy owned Apartment 10G in the River House, located at 435 East 52nd Street, New York City (the "River House apartment"). The complaint alleges that on February 12, 1979,

John Galbreath, with the knowledge or assistance or both of Daniel Galbreath, Dolorees Dutoit and others, obtained Dorothy Galbreath's signature on two letters bearing that date which purported to document the sale of the River House apartment to John Galbreath for $81,099.52, while continuing to obligate Dorothy Galbreath to pay all operating bills and maintenance expenses for the apartment. That purported purchase price was grossly below the market value, which today would be several million dollars. (Complaint, ¶ 61)

Although Dorothy Galbreath never went to the apartment after she transferred it to her husband, her accounts were charged with expenses of maintaining the apartment until she died seven years later.

Under the Will ownership of the River House apartment passes to the Family Trust after John Galbreath's life estate.

The complaint's first twelve claims concern the River House apartment and seek reconveyance, rescission, restitution, a constructive trust, replevin, and damages for fraud, wrongful withholding of possession of property, conversion, trespass, breaches of fiduciary duty, and tortious interference with expectancy.

#### b. *Saratoga property*

Dorothy Galbreath owned a house in the City of Saratoga Springs, New York (the "Saratoga property") where she stayed during the August horse-racing season and summer thoroughbred sales.

On June 30, 1981 John Galbreath and John Eckler obtained Mrs. Galbreath's signature on a deed (the "Saratoga deed") which transferred title to the Saratoga property to John Galbreath. (Complaint, ¶ 94) Bricker & Eckler prepared the Saratoga deed.

As with the River House apartment, Dorothy Galbreath's accounts were used to maintain, insure, furnish and pay taxes on the Saratoga property, although it was used by John Galbreath, Daniel Galbreath, Joan Phillips, and James Phillips. Similarly, the Will provides for the Saratoga property to pass to the Family Trust, after a life estate for John Galbreath.

The complaint's thirteenth through twenty-fourth claims concern the Saratoga property, and contain allegations substantially identical to those concerning the River House apartment. The twenty-fifth through thirty-first claims lie against Bricker & Eckler and its four named partners, for their participation in the transfer of the Saratoga property.

#### c. *Gifts*

Between 1979 and 1985 Dorothy Galbreath purportedly gave breeding rights to

Daniel Galbreath on five occasions and to Joan or James Phillips on six occasions. (Complaint, ¶ 154) In 1983 she also gave Daniel Galbreath interests in two horses, and the Phillips an interest in another horse. (*Id.*)

On April 24, 1985 Mrs. Galbreath gave John Galbreath a one-half interest in her horse Proud Truth, a favorite in that year's upcoming Kentucky Derby. At the time of her death, Proud Truth's value was over $11,000,000, and it currently earns about $1,200,000 annually in stud fees.

Under the Will, John Galbreath was to receive all her interests in horses held jointly with him; Daniel Galbreath and Joan Phillips were to receive, in equal shares, all her interests in stallions; and the Family Trust was to receive all the rest of Dorothy's interests in horses, under the residuary clause.

According to the complaint Dorothy Galbreath paid an inequitable share of the expenses at Darby Dan Farm, yet was denied breeding fee income earned by her horses and the proceeds from sales of her horses.

The complaint also alleges that over $2,500,000 of Mrs. Galbreath's money was given to charities which she "had no prior history of giving to or having an interest in" but of which Galbreath family members are officers, board members or active supporters. (*Id.* at ¶ 159)

The thirty-second through forty-fifth claims cover the allegations described above.

The fiftieth through fifty-fourth claims concern over $500,000 in transfers made after 1978 to Galbreath entities or other entities which concerned the Galbreath family, and the fifty-fifth through fifty-ninth claims involve transfers made before 1978 which were "part of a continuing pattern of transactions ... aimed at diverting her wealth to" the Galbreath family. (*Id.* at ¶ 224) The latter include the allegation that Mrs. Galbreath paid more than her proportionate share of the Galbreaths' joint tax liability, on returns prepared by Bolon Hart.

### d. *Remaining Claims*

The forty-sixth through forty-ninth claims concern a limited warranty deed signed by Mr. and Mrs. Galbreath on December 20, 1985, which purports to transfer property in Columbus, Ohio to Mr. Galbreath and to effect a release of Mrs. Galbreath's "right of dower in the premises."

The fifty-ninth through seventy-third claims charge each of Bolon Hart, Bricker & Eckler, and Dolorees Dutoit with breach of fiduciary duty, breach of contract, fraud, and tortious interference with expectancy. The two firms are each charged with malpractice or negligence.

Finally, the seventy-fourth claim alleges a violation of RICO, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68.

### DISCUSSION

Defendants seek to transfer this action to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

### 1. Transferee forum's jurisdiction and venue

The threshold question is whether the action could have been brought in the transferee forum in the first place. *In re Air Crash Disaster at John F. Kennedy Int'l Airport,* 479 F.Supp. 1118, 1123 (E.D. N.Y.1978). The transferee court must have both proper venue and jurisdiction over all defendants in the action. *Id.*

### a. *Jurisdiction over all defendants*

■ The district court in Ohio would arguably lack jurisdiction over two sets of defendants: some of the Firestone grandchildren (who reside in California, Florida, Texas, Maryland, the District of Columbia, and Canada) and the Jockey Club and River House Realty (neither of which has any connection with Ohio).

Defendants argue that the Firestone grandchildren may be realigned as plaintiffs, as the complaint requests at paragraph 42:

> Although [plaintiffs'] siblings (including half-siblings and adopted step-siblings) are joined as parties defendant, they can and should be realigned as plaintiffs, as necessary, for purposes of determining diversity of citizenship, because those siblings claim to be beneficiaries of the Family Trust, in the same manner as plaintiffs.

Defendants also rely on *Broidy v. State Mutual Life Assurance Co.*, 186 F.2d 490, 492 (2d Cir.1951), where the court upheld realignment of a defendant against whom the complaint sought no relief and which had "every interest in supporting the plaintiff's recovery and no advantage in defeating it."

Defendants contend that River House Realty and the Jockey Club are not necessary parties under Fed.R.Civ.P. 19 [1] because they have no interest in the controversy, and plaintiffs will not be harmed by their dismissal because

> [t]hey do not seek to specifically have River House Realty or The Jockey Club involved in anything other than relief which they can obtain by other Defendants named in this action. The only relief the Plaintiffs seek from River House Realty and from The Jockey Club is to have them act as a conduit in the transfer. Not only is this relief inappropriately requested of those parties, it is relief which is obtainable by an order compelling the person holding title to the property interests involved to reconvey.

(Galbreath Defendants Reply Memorandum, pp. 68–69) According to defendants, River House Realty and the Jockey Club

may therefore be dropped from the action, pursuant to Fed.R.Civ.P. 21.[2]

Plaintiffs argue, with respect to both sets of defendants, that the transferor court may only consider the transferee court's jurisdiction at the time the action was filed.

In *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the Court stated that the transferee court's jurisdiction under section 1404(a) is not "where [the complaint] may now be rebrought, with defendants' consent." *Id.* at 343, 80 S.Ct. at 1089. However, *Hoffman* concerned defendants' waiver of jurisdiction in an attempt to forum shop. Here, plaintiffs have themselves suggested realignment of the parties. In a case decided two weeks after *Hoffman*, the Court cautioned that section 1404(a) should not be applied ritualistically and emphasized its primary purpose of convenience to the parties and the witnesses. *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

Accordingly, the Jockey Club and River House Realty are dismissed as defendants, the Firestone grandchildren are realigned as plaintiffs, and jurisdiction is proper in the Southern District of Ohio.

### b. *Proper venue*

Venue is proper in the district in which the claim arose. 28 U.S.C. § 1391(b). Defendants argue that plaintiffs' claims arose in Ohio because Mrs. Galbreath lived there and relief is sought on behalf of her estate and the Family Trust. In addition,

> The properties at issue, except for two pieces of real estate and related chattels in New York, were and are located in Ohio. The agreements between Mr. and

---

**1.** Rule 19 directs that a party shall be joined in an action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

**2.** Rule 21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

. . . . .

Mrs. Galbreath to transfer those properties occurred in Ohio. The numerous transfers complained of, with few exceptions, occurred completely in Ohio. The recipients also are, or in the case of John Galbreath were, residents of Ohio.

Furthermore, the sole basis for Plaintiffs' claim is that they have been deprived of properties to be received as beneficiaries of the Family Trust, which was created and is being administered in Ohio. The Family Trust was to receive the properties under the Will, which was executed in Ohio and is being probated and administered in Ohio.

(Galbreath Defendants Memorandum, p. 52)

Plaintiffs contend that a transfer is not permissible because their claims concerning the River House apartment and Saratoga property are local actions, and that venue is proper only where the property is located. (Plaintiffs Surreply Memorandum, pp. 83–84)

*Musicus v. Safeway Stores, Inc.*, 743 F.2d 503 (7th Cir.1984) is instructive:

Proper venue is determined by the characterization of the action as either local or transitory—a determination which, in turn, depends on the type of relief sought.... [T]he federal statute, 28 U.S.C. §§ 1391–1401, does not define either a local action or a transitory action. The traditional and well-established distinction, however, is the same as that between *in personam* and *in rem* jurisdiction. The reason for this parallel is simply that, in order to provide *in rem* relief, the court must have jurisdiction over the real property at issue, and a local action must therefore be brought in the jurisdiction in which that real property is located. On the other hand, to provide *in personam* relief, the court need only have personal jurisdiction over the defendant, and thus a trans-

itory action may be brought in any jurisdiction in which the defendant can be found.... This same distinction is applied even to the situation in which the plaintiff seeks a personal judgment which will ultimately affect real property—so long as the action is based on fraud, trust or contract. Such an action is considered to be transitory and may be brought in any jurisdiction where there is personal jurisdiction over the defendant.

. . . . .

[A]n action for monetary damages for injury to land caused by trespass has been treated as an exception to the general rule favoring characterization as transitory actions which we have discussed.

*Id.* at 506–07, 509 (citations omitted).

Ohio law, which plaintiffs cite, is not to the contrary. *Thayer v. Brooks*, 17 Ohio 489 (1848) agrees that an action for trespass is local. And *Domby v. Domby*, 97 N.E.2d 104, 106 (Oh.Ct.Com. Pleas 1951), recognizes the distinction between local and transitory actions:

Certainly Ohio would never recognize power in the court of another state to entertain jurisdiction over a suit to recover real property located in Ohio; yet Ohio does recognize that a court of equity in another state has the power, acting in personam, to determine equities between the parties in realty located in Ohio and to compel parties to convey such realty.

*See also Gem City Acetylene Generator Co. v. Coblentz*, 86 Ohio St. 199, 99 N.E. 302, 303 (1912) (local action if "title to the real estate is directly, and not incidentally involved").

Applying the distinction between local and transitory actions to plaintiffs' twenty-four claims concerning the River House apartment and the Saratoga property[3], it appears that only two claims—those for

---

**3.** Defendants also contend that plaintiffs' reliance on the local action doctrine is unavailing (1) with respect to the River House apartment because an interest in a cooperative apartment is personal, not real, property, *see Suddin v. Lynbrook Gardens Co.*, 127 Misc.2d 406, 486 N.Y.S.2d 155 (N.Y.Co.1985), and (2) with respect

to the Saratoga property because it is located in the Northern District of New York. Accepting both contentions, it must be determined whether the Ohio court may exercise jurisdiction over plaintiffs' claims with respect to the Saratoga real estate.

trespass—are local. The eight claims for breach of fiduciary duty, tortious interference with expectancy, and a constructive trust to be imposed upon John W. Galbreath's estate require only jurisdiction over the person and thus are transitory. The six claims for conversion and replevin of the apartment's and Saratoga house's contents, and conversion of Mrs. Galbreath's funds (by wrongfully charging her accounts for expenses related to the properties) are also transitory actions, *Musicus v. Safeway Stores*, 743 F.2d at 511 n. 6 (citing *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895)), as are those seeking damages based on fraud and wrongful possession. *Id.* at 507. Finally, the claims seeking a declaration that the transfers are void and that Mrs. Galbreath's estate is the rightful owner, reconveyance of the properties, and an injunction directing defendants to vacate the properties (claims one, three, thirteen, and fifteen), are likewise transitory. *See Sax v. Sax*, 294 F.2d 133 (5th Cir.1961) ("The complaint does not ask the Court to exercise dominion over any property ... [I]t merely seeks to have the Court, utilizing its equitable powers, compel a person to undo a fraudulent conveyance of property. The party charged with perpetrating the fraud, and the party acquiescing in and benefiting by the fraud are each before the Court. To grant the requested relief the Court would merely be required to declare as to the parties before it that the agreement between them is invalid because of fraud and then through coercive sanctions against the guilty parties compel them to take suitable action"); *Tcherepnin v. Franz*, 439 F.Supp. 1340, 1345 (N.D.Ill. 1977) ("It is well-settled that in an action to set aside a fraudulent conveyance of land the court has jurisdiction wherever the person can be found, although lands not within the jurisdiction may be affected by the court's decree"); *Domby v. Domby*, 97 N.E.2d at 106; *Hayes v. O'Brien*, 149 Ill. 403, 37 N.E. 73, 74 (1894).

▆ The claims for trespass alone do not render the entire action a local action, where plaintiffs' primary claims seek reconveyance of the property on the grounds

of fraud and undue influence. *See Musicus*, 743 F.2d at 511 (when "the suit for damages based on injury to trespass is joined in the same action with requests for damages based on breach of contract and fraud, the entire action may be brought in a single proceeding.") (footnote omitted); *accord Jacobs v. Tenney*, 316 F.Supp. 151 (D.Del.1970); *Ladson v. Kibble*, 307 F.Supp. 11, 16 (S.D.N.Y.1969).

2. Factors pertaining to transfer

▆ "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' A motion to transfer under § 1404(a) thus calls on the District Court to weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). The pertinent factors to be considered in determining whether transfer is proper include

(1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining willing witnesses; (5) the relative access to sources of proof; (6) where the events at issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general.

*Cain v. New York State Board of Elections*, 630 F.Supp. 221, 226 (E.D.N.Y.1986); *see also Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967).

a. *Convenience of the parties*

This factor weighs in favor of transfer. While ten of the eleven RICO defendants and fifteen of the seventeen defendants against whom plaintiffs seek damages reside in Ohio, (Bricker & Eckler Memorandum, p. 35), only defendants Lizanne Gal-

breath and Galbreath–Ruffin Corp.[4] reside in New York. Although some Galbreath defendants have extensive contacts in New York, the law firm and its four partners, the accounting firm, and Dolorees Dutoit do not.

Plaintiffs reside in California, but they are already prosecuting two related matters in Ohio. In deciding transfer motions, courts no longer give overriding consideration to a plaintiff's choice of forum "especially when plaintiff brings suit outside his own home forum." *Y4 Design Ltd. v. Regensteiner Pub. Enterprises, Inc.*, 428 F.Supp. 1067, 1070 (S.D.N.Y.1977).

b. *Convenience of material witnesses, availability of process to compel the presence of unwilling witnesses, and cost of obtaining willing witnesses*

These factors are of substantial importance. *See Teachers Ins. and Annuity Assn. of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984) (because of the importance of testimony of eyewitnesses and participants the trial should be held where they reside or are readily available); *Vaughn v. American Basketball Assn.*, 419 F.Supp. 1274, 1276–77 (S.D.N.Y.1976).

The central issue in this case is whether Mrs. Galbreath had the mental capacity, especially after 1978, to transfer her property. It appears that plaintiffs will rely heavily on the testimony of Dr. Perdue, who saw Mrs. Galbreath in Florida each winter. Defendants in refutation will call other physicians and nurses who saw Mrs. Galbreath in Ohio[5] at other times of the year: they list ten physicians, and many nurses, all of whom live in Ohio and treated Mrs. Galbreath between 1978 and 1984.

Dr. Perdue states that "I would be seriously inconvenienced by having to travel to Columbus for a trial and imagine that other Florida witnesses would too. It would be

significantly easier for me to travel to New York than to Columbus." (Affidavit of Dr. Jean Perdue, sworn to Mar. 11, 1989, ¶ 34) However, her deposition has already been videotaped twice in this or a related proceeding: on July 19 and 20, 1988 and again in 1989. Thus, it is uncertain whether she will have to travel at the time of trial.

Defendants also assert that they will call as witnesses many Galbreath employees who live in Ohio. (Galbreath Defendants Memorandum, p. 59)

On the other hand, plaintiffs claim that numerous witnesses whom they will call at trial live in New York. These include attorneys, managers, the superintendent, and housekeepers from River House Realty; representatives of various stores (such as grocery, laundry, and liquor stores) with respect to expenses of the River House apartment and Saratoga property; representatives of the Jockey Club and the New York Racing Association; and "[s]ocial friends of [Mrs. Galbreath] who live in New York [and] can provide important detail of her personality, loyalties and involvements, as well as her relationship with the Galbreaths and the advantage they took of her in her final years. Some of those friends are very elderly, and for them it would be a particular inconvenience (and perhaps impossibility) to travel to Ohio." (Plaintiffs Surreply Memorandum, p. 38)

Defendants point out that little of these witnesses' testimony is critical: "It is highly probable that none of the maintenance and operation testimony concerning River House [and the Saratoga property] will be disputed. Most of the information ... that will be elicited by the New York witnesses has previously been supplied to Plaintiffs by Defendants." (Galbreath Defendants Reply Memorandum, p. 81)

Given the importance of the testimony of the Ohio medical witnesses[6], the preserva-

---

**4.** Although River House Realty and the Jockey Club also are in New York, they have been dropped as defendants.

**5.** Both sides will also call other medical witnesses who reside in Florida.

**6.** Plaintiffs strenuously urge that, in light of Dr. Perdue's stature and the force of her evidence, defendants cannot in fact produce Ohio witnesses to rebut her. This point cannot be decided in plaintiffs' favor on the affidavits, which indicate that the amount of medical testimony from Ohio sources will be substantial in any event.

tion of Dr. Perdue's testimony on video-tape, and the uncontested nature of much of the New York witnesses' testimony, these factors on balance support transfer to Ohio.

### c. *Relative access to sources of proof*

According to defendants, all the legal, accounting, medical, nursing and business records are in Ohio. These include: over 10,000 pages of accounting records spanning the years 1955–86; 30–40,000 pages of financial documentation with respect to Mrs. Galbreath's accounts and 50–100,000 pages with respect to Mr. Galbreath's accounts; 2,000 pages of medical records and 4,000 pages of nurses' notes in the custody of The Ohio State University Hospitals and Riverside Methodist Hospitals in Columbus; and over 3,000 documents concerning the 2–300 horses owned and kept by Mrs. Galbreath at Darby Dan Farm. (Galbreath Defendants Memorandum, p. 64–65; Affidavit of Robert M. Kincaid, Jr., Esq., sworn to Feb. 7, 1989, ¶ 11; Affidavit of Dolorees Dutoit, sworn to Feb. 7, 1989, ¶ 6–8, 14, 18–19) Records pertaining to thoroughbreds are maintained at the Jockey Club's Lexington, Kentucky office.

### d. *Where the events at issue took place*

■ The plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the transferor forum. *See Uddyback v. New Jersey Transit Rail Operations*, 629 F.Supp. 1173 (S.D.N.Y.1986); *Mobile Video Services, Ltd. v. National Assn. of Broadcast Employees and Technicians, AFL–CIO*, 574 F.Supp. 668, 671 (S.D.N.Y.1983); *Troyer v. Karcagi*, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980); *Essex Crane Rental Corp. v. Vic Kirsch Construction Co.*, 486 F.Supp. 529, 537 (S.D.N.Y.1980).

Notwithstanding plaintiffs' assertions that "a great number of improper transactions involving the horse operations occurred here," and that Mrs. Galbreath's funds were used to pay maintenance charges for the River House apartment and the Saratoga property (Plaintiffs Memoran-dum, p. 95, 96), nearly all of the significant actions involved in this case took place outside New York.

Mr. and Mrs. Galbreath lived in Columbus, Ohio, spent much of the winter months in Florida, and traveled a great deal. According to Mrs. Galbreath's financial secretary

6. Since 1955, all expenses involved in the operation of River House were paid either by Mr. Galbreath or Mrs. Galbreath from Columbus, Ohio with funds from bank accounts maintained in Columbus, Ohio....

8. Mrs. Galbreath's stock certificate evidencing ownership in River House was maintained in Columbus, Ohio.

9. As part of my job responsibilities as financial secretary for Mrs. Galbreath, Mrs. Galbreath instructed me to draft the agreement for the transfer of Mrs. Galbreath's interest in River House to Mr. Galbreath, and to effect the transfer of the interest by facilitating execution of the documentation in Dade County, Florida....

11. The agreement to sell River House was made in Columbus, Ohio.

12. The writing evidencing the agreement to sell River House was drafted in Columbus, Ohio and signed by the parties in Dade County, Florida.

13. The proceeds received by Mrs. Galbreath for the sale of River House were deposited in her account in Columbus, Ohio.

14. The proprietary lease, assignment of lease, assumption of lease and stock power incident to the sales transaction of River House were executed in Dade County, Florida, and are maintained in Columbus, Ohio....

16. The agreement to transfer [the Saratoga property] was executed in Columbus, Ohio.

17. The deed evidencing the transfer was executed in Columbus, Ohio.

18. All maintenance and upkeep of the Saratoga property was directed from Columbus, Ohio....

30. All of the decisions to make the contributions [to Ohio charities between 1979 and 1985] were made by Mrs. Galbreath in Columbus, Franklin County, Ohio, and the checks were issued from Columbus, Franklin County, Ohio, drawn on her bank account maintained by Mrs. Galbreath in Columbus, Franklin County, Ohio....

34. All of the loans made by Mrs. Galbreath were made in Columbus, Franklin County, Ohio from funds on deposit in Mrs. Galbreath's account in Columbus, Franklin County, Ohio.

Although the Galbreaths' activities were not confined to any one town, the dominant center of their activities was Columbus, Ohio.

In addition, on a motion to transfer courts consider which law will be applied to the action. *Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) ("There is an appropriateness... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems ... in law foreign to itself"). Bolon Hart asserts that the law of Ohio will at least apply to issues of accounting malpractice and testamentary capacity, (Bolon Hart Memorandum, p. 35), and Bricker & Eckler asserts that Ohio law will apply to all the common law claims since that state has the greatest interest in the action. (Bricker & Eckler Memorandum, p. 37)

e. *Practical problems indicating where the case can be tried more expeditiously and inexpensively*

A large amount of travel expenses and legal fees will be incurred by both sides, no matter where the trial is conducted. One cannot say with any certainty whether the Ohio court or this court can try the matter more expeditiously. These factors are therefore without decisive effect on this motion.

f. *Interests of justice*

"The District Court also must weigh in the balance ... those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 108 S.Ct. at 2244.

Plaintiffs argue that defendants wish to have this action transferred to Ohio because they "expect it to be more receptive to their defenses." (Plaintiffs Surreply Memorandum, p. 43) They contend that this court should consider "the ulterior motive the moving defendants have betrayed in trying to secure transfer to Ohio. Within days of receiving the complaint, lawyers for the Galbreath defendants had undertaken a campaign to obtain consents to transfer from the nominal defendants who were joined as grandchildren or putative grandchildren of Dorothy Galbreath." (Plaintiffs Memorandum, p. 97) Plaintiff Douglas Firestone also states that this action should not be transferred to Ohio because when he tried to secure counsel there to represent him in his challenge to the Will "[a] disturbing number ... declined to represent me ... apparently because of a reluctance to accept a representation adverse to a family that is so prominent and powerful in Columbus and Ohio generally." (Affidavit of Douglas B. Firestone, sworn to Mar. 4, 1989, ¶ 4)

Defendants have submitted an affidavit from Thomas J. Kilban, Esq., stating that he was asked to represent one or more of Dorothy Galbreath's grandchildren, agreed to do so, but was later told that the matter would be settled and his services would not be needed. In addition, the lawyer for the Galbreath defendants who spoke to certain defendants to see if they would consent to a transfer has submitted an affidavit disclaiming improper statements attributed to her. Passing this peripheral dispute, there is nothing which rises to a showing that the Ohio federal and state courts cannot provide a fair trial to all parties.

CONCLUSION

For the convenience of parties and witnesses, in the interest of justice, this action should be transferred to Ohio.

The Jockey Club and River House Realty will be dismissed as defendants, the Firestone grandchildren realigned as plaintiffs, and the file and this order transmitted to the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division.

So ordered.