**CENTO GROUP, S.P.A., Plaintiff,**

v.

**OROAMERICA, INC., Defendant.**

**No. 92 Civ. 3555(RWS).**

United States District Court, S.D. New York.

June 1, 1993.

Hopgood, Calimafde, Kalil, Blaustein & Judlowe by Paul H. Blaustein, Grant E. Pollack, of counsel, New York City, for plaintiff.

McAulay Fisher Nissen Goldberg & Kiel by Julius Fisher, of counsel, New York City, Drucker & Sommers, by I. Morley Drucker, Howard N. Sommers, of counsel, Beverly Hills, CA, for defendant.

## OPINION

SWEET, District Judge.

Defendant OroAmerica, Inc. ("OroAmerica") has moved to transfer this suit for the infringement of a jewelry chain design patent to the central district of California pursuant to 28 U.S.C. § 1404(a) and for sanctions pursuant to Rule 11, F.R.Civ.P. For the reasons given below, the motion to transfer is granted, and the motion for sanctions is denied.

### The Parties

The Plaintiff, Cento S.p.A. ("Cento"), is an Italian corporation whose principal place of business is Milan and whose principal business is selling chain jewelry. The Cento Group ("Cento Group"), which is not a party to this action, is a registered New York partnership 40% owned by Cento S.p.A., 20% owned through Shem–Tov Holding Corporation, and 40% held by Balance Rival, Ltd.

OroAmerica is a California corporation whose principal place of business is located in Burbank, California.

### The Facts

On May 12, 1992, Cento was issued United States Design Patent No. D326,065 for a diamond cut 14–karat gold chain design with elongated links sold in its catalogs as Figarope (the "Figarope patent"). On May 14, 1992, Cento filed a complaint alleging, on information and belief, that the design of a jewelry chain produced by OroAmerica, sold under the tradename Milano Rope (the "Milano Rope"), infringed the Figarope patent.

OroAmerica answered the complaint by alleging that Cento does not have a place of business in New York and that the Figarope patent is invalid for a host of reasons.

Cento contends that the United States, especially New York, supplies such a major market for its jewelry that it maintains a permanent place of business here. The extent to which it actually does so is quite a bone of contention between the parties, although it is clear that Cento Group has shared office space at 580 Fifth Avenue with Empire Watches in New York's jewelry district.

OroAmerica, which maintains a showroom in a different suite at that same address, states that about a year before this action was commenced Cento, S.p.A., essentially closed up shop in this country and henceforth has done business with American clients through its Italian offices, its traveling sales staff, and an agent, Christina Lesco, who usually works out of her home in New York but sometimes works out of the office on Fifth Avenue. Cento states that employees in its Italian office have referred to its office as "closed" in the sense that its merchandise is no longer stored or shipped from that location, but that it has by no means ceased to do business in New York. Even OroAmerica admits, however, that Cento Group cannot have severed all ties with its former officemate: Cento's name is still on the door

of the suite and on the directory of the building, and it is listed in the New York Telephone Directory at the same address.

OroAmerica filed this motion to transfer on June 23, 1992. Oral argument was heard on February 3, 1993, and the motion was considered fully submitted as of that date.

## Discussion

### Transfer Pursuant to § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Venue in this case is proper in both the Southern District of New York, where Cento maintains its sells most of the jewelry it ships to the United States, and in the central district of California, where OroAmerica has its headquarters. Both sell their merchandise to stores located in New York and Los Angeles.

The moving party—in this case, OroAmerica—bears the burden to justify a change of venue. *Factors, etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Christina Canada, Inc. v. Wior Corp.*, 702 F.Supp. 461, 463 (S.D.N.Y. 1988); *Troyer v. Karcagi*, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980); *Schindelheim v. Braniff Airways, Inc.*, 202 F.Supp. 313, 315 (S.D.N.Y.1962). Unless the balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Ayers v. Arabian Amer. Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983). However, "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964).

The core of Cento's argument is that the Southern District of New York is not merely convenient to both parties under traditional Section 1404(a) analysis, but that New York, as the center of the United States jewelry industry, is the most natural and logical forum for this suit. Since most sales, most customers, the most important trade shows, and the finest expertise of the jewelry industry are located here, Cento argues, it makes sense for the case to be heard here.

Logical and appealing as this argument is, it is not the test for transfer under Section 1404(a). The factors which should influence a court in deciding whether or not to transfer under Section 1404(a) include the place where the operative events occurred, the convenience of parties and witnesses, the location of documents, the relative ease of access to the sources of proof, the availability of process to compel attendance of unwilling witnesses, the plaintiff's choice of forum, a forum's familiarity with the governing law, trial efficiency and the interests of justice. *Boreal Laser Inc. v. Coherent Inc.*, 22 U.S.P.Q.2d 1559 (S.D.N.Y.1992); *Gibbs & Hill, Inc. v. Harbert Int'l., Inc.*, 745 F.Supp. 993, 996 (S.D.N.Y.1990); *Don King Prods., Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y.1990); *Christina Canada, Inc. v. Wior Corp.*, 702 F.Supp. at 463.

### Location of the Parties

The convenience of parties and witnesses is considered "the essential criteria under the venue statute," *First City Federal Savings Bank v. Register*, 677 F.Supp. 236, 237 (S.D.N.Y.1988), and "the most significant factor," *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988). Cento argues that the convenience of the parties and witnesses in this case parallels the facts in *Christina*, in which this Court refused a motion to transfer to California an action for patent, trademark, and unfair competition between a Canadian and a California corporation. While this case has many elements in common with *Christina*, other elements differ too greatly and render the analysis in that case inapplicable to the one at bar.

The heart of this controversy is OroAmerica's allegation that Cento does not have a *bona fide* sales office in New York. OroAmerica alleges that "the only apparent reason for Cento's counsel's selection of this district is that Cento's counsel's offices are located here, a factor of relatively little con-

sequence." The convenience of counsel is of relatively little consequence, *Matra et Manurhian,* 628 F.Supp. 1532, 1535 n. 5 (S.D.N.Y.1986), but Cento does not base its argument on the convenience of its counsel and has alleged more contacts with New York than the location of his office.

Although Cento alleges that three of the employees of Cento Group work out of the office on Fifth Avenue, it admits that its only employee in New York City responsible for selling the jewelry products of Cento is Ms. Lesco. However, Cento alleges that she has in her possession in New York thousands of Cento documents, including copies of U.S. sales invoices for Figarope, and that her testimony will be vital to the issues of the success of the infringement and the corresponding lost profits.

Although Cento Group is unquestionably doing business within the State of New York, a comparison with the facts of *Christina* show that the balance of convenience for this first factor favors OroAmerica. In *Christina,* the Canadian plaintiff marketed its goods through an American sister corporation which had three employees in New York who handled all shipments, returns, and customer complaints for the American market out of the New York office. *Christina,* 702 F.Supp. at 464. Cento, by contrast, does not keep any merchandise in Cento Group's New York office and ships and handles its goods directly from Italy.

In fact, OroAmerica has more extensive contacts with New York than Cento, for OroAmerica maintains its own office in the building on Fifth Avenue, has three full time sales representatives, appears at all the important trade shows in New York, and sells to several important accounts in the New York area. Cento alleges that this automatically makes New York a convenient forum for OroAmerica. While this may be true, the test is to determine which forum is more convenient, not whether the chosen forum is impossibly inconvenient for the defendant. OroAmerica, which alleges that it stores all its records in Burbank, maintains that California is more convenient than New York. Nothing put before this court by Cento contradicts this.

Cento contends that a transfer will inconvenience Cento Group. However, the partnerships is not a party to this litigation; therefore, whether or not transfer serves its interests is immaterial. The issue remains whether Cento's presence anywhere in the United States is enough to counteract OroAmerica's main office in California. While Cento's weaker presence in New York may be merely the inevitable result of the fact that OroAmerica is a larger company, it also indicates that Cento's principal place of business is Italy. Although Cento has arranged to take orders from New York and for that purpose employs a sales representative here, it handles its shipments directly from Italy. Since this Court cannot transfer the action to Italy, the location of one of the parties in another jurisdiction and the other outside of any jurisdiction tips the balance of convenience in favor of OroAmerica.

## Convenience of the Witnesses and Sources of Proof

Not surprisingly, OroAmerica alleges that every witness and every piece of evidence required for its case must be flown in at great expense from California. With equal emphasis, it insists that all evidence in support of Cento's case must be imported from Italy.

The truth appears to be somewhat in between. On the issues of design infringement, it is clearly the case that the designers and information on the design will be wholly in Italy or in California. On the issue of the relative success of the alleged infringement and of damages, on the other hand—on the amount and location of the sales of Milano Rope—certain of both companies' sales representatives, customers, and other witnesses who may testify will be in New York. However, Cento has alleged the identity of only one witness in New York, its sales representative Ms. Lesco. OroAmerica has identified three witnesses who may testify about the design of Milano Rope and four more who may testify as to the sales and profitability of Milano Rope. All the other witnesses will have to travel whether or not this action is transferred. While California is further from Italy than New York, this factor only

slightly increases the Plaintiff's inconvenience.

The availability of compulsory process favors transfer. Cento is the plaintiff here, and presumably is willing to produce records under its control proving the infringement and the damage. It has not alleged any witnesses in New York who are unwilling to testify; to the extent there are witnesses in Italy who may be unwilling to testify—such as the designer of Figarope, Caterina Borgoni, whom Cento alleges is not currently an employee—there is no difference in the availability of compulsory process between New York and California. An action in California, on the other hand, will give a California court process to demand the attendance of California witnesses associated with OroAmerica.

■ Despite Cento's arguments about the jewelry trade in New York, expert witnesses on jewelry design and the trade are available in both Los Angeles and in New York. This factor does not weigh in favor of transfer, and in any event expert witnesses are not given great weight in the analysis under Section 1404(a). *Matra Et Manurhin v. International Armament Co.,* 628 F.Supp. 1532, 1536 (S.D.N.Y.1986).

Finally, OroAmerica alleges the relevant documents are all in California. Since this case will focus on whether Milano Rope infringes the Figarope patent, the bulk of relevant evidence will come from OroAmerica's facilities in Burbank. Relevant evidence regarding the patent itself will come from the owner of the patent and from its designer, both Italian. Although it is likely that Cento Group in New York can provide evidence of the success of the infringement, the relevance of such material to the patent or OroAmerica's alleged infringement is minimal. Transfer will facilitate access to the relevant documents and records. *Boreal Laser Inc. v. Coherent, Inc.,* 22 U.S.P.Q.2d 1559 (S.D.N.Y.1992); *Firestone v. Galbreath,* 722 F.Supp. 1020, 1030 (S.D.N.Y.1989).

### Trial Efficiency and the Interests of Justice

Beyond these particular concerns, however, a district court has discretion to transfer an action to where the trial would best be expedient and just. *Red Bull Assoc. v. Best*

*Western Int'l., Inc.,* 862 F.2d 963, 967 (2d Cir.1988). The Plaintiff has not alleged any reason why the courts in California cannot provide as full and fair a trial as the courts of New York.

Nor does either forum's familiarity or unfamiliarity with governing law justify transfer. Cento has made only one claim based on federal patent law, and presumably both courts in New York and California are equally likely to be familiar with federal patent law. The facts underlying the infringement have no material connection to this forum, *Firestone,* 722 F.Supp. at 1030; *Matra,* 628 F.Supp. at 1535. The operative events concerning the alleged infringement occurred in California. *Boreal Laser Inc. v. Coherent, Inc.,* 22 U.S.P.Q.2d 1559 (S.D.N.Y.1992); *Gibbs & Hill,* 745 F.Supp. at 996.

Cento alleges that the majority of its sales and sizable sales of Milano Rope occur in the New York area. However, where the goods in question are sold in many states (and OroAmerica avers that it sells in every state in the union) the location of sales does not override the other factors favoring transfer. *Matra,* 628 F.Supp. at 1536.

Finally, it should be noted that another factor for transfer, not at issue in this case, differs this motion to transfer from the one at issue in *Christina.* In *Christina,* New York provided the best forum for Christina's unfair competition claim, which arose from the two parties' efforts to sell their competing swimwear lines in certain New York stores. Although Cento has alleged a comparable claim in its Memorandum of Law, it has not alleged comparable incidents, and its general claim of infringement "upon information and belief" does not imply any localized, particular incidents in New York which could count as a factor in this analysis.

In short, the balance of factors for transfer tips in favor of OroAmerica. The convenience of one party will be served while the other will only have to travel to a forum somewhat further but in all other respects comparable to the one it chose. *Berkshire Int'l Corp. v. Alba–Waldensian, Inc.,* 352 F.Supp. 831, 833 (S.D.N.Y.1972); *Matra,* 628 F.Supp. at 1535.

### Sanctions

■ OroAmerica has moved for sanctions on the grounds that Cento's description of its New York office as a "place of business" is a material misstatement of fact, and that filing this action in the Southern District of New York amounts to harassment of OroAmerica. Rule 11, F.R.Civ.P., requires a federal court to impose sanctions against an attorney or party who signs a pleading, motion, or other paper, in violation of the rule that the signer certifies:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

In determining whether sanctions should be imposed, the Second Circuit has held:

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... [W]here it is patently clear that a claim has absolutely no change of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (footnote omitted). The question, then is whether Cento's counsel's conduct could be the result of reasonable inquiry at the time he signed the Complaint alleging that Cento had a place of business in New York. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.), *cert. denied sub nom., Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Quadrozzi v. City of New York,* 127 F.R.D. 63, 79 (S.D.N.Y.1989).

Cento has a presence at 580 Fifth Avenue. Its name is on the door, in the directory, and in the telephone book; while no merchandise is stored there, Cento alleges that its sales representative who handles its orders for Italian jewelry keeps her records there. The mere fact that she works out of her home as well does not mean she does not make use of the office space which Cento shares with Empire Watch. The fact that Cento does not ship or show merchandise out of an office suite mostly occupied by a separate company simply means that, in comparison with OroAmerica's corporate headquarters in Burbank, the location of the parties as a factor for the most convenient venue for this action weighs in favor of California. It does not mean that a reasonable attorney could not list the Fifth Avenue address as Cento's place of business in America.

The core of counsel's opposition to the transfer was not that Cento was doing business in New York, but that New York, as the center of the jewelry trade in this country, is the most natural venue for this lawsuit. This theory may well represent a better interpretation of how transfers of venue should be accomplished than the traditional test of balancing individual factors. The fact that it did not work can on no account serve as a justification for imposing sanctions.

### Conclusion

For the reasons given above, OroAmerica's motion to transfer is granted and its motion for sanctions is denied.

It is so ordered.