John Douglas CARTER, James Beason, Robert Rowley, Rudy Madrigal and Gene Miller, Plaintiffs,

v.

AMAX COAL CORPORATION, a Delaware corporation, Robert Gossman, Dennis Bryant, John McCurdy, Skip Flannagan and John Does I through X, Defendants.

Civ. No. 89–C–612G.

United States District Court, D. Utah, C.D.

July 30, 1990.

L. Zane Gill, for plaintiffs.

Mark Gavre, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly on March 23, 1990 for hearing on Plaintiffs' Motion to Remand to State Court and on Defendants' Motion for Partial Summary Judgment. Plaintiffs were represented by L. Zane Gill and defendants were represented by W. Mark Gavre. After briefing by the parties and oral argument, the court took the motions under advisement. Post-argument memoranda and materials were also filed by the parties. Now, being fully advised, the court sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

This case requires consideration of the scope of preemption of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001, *et seq.* (1985 & Supp. 1990). Plaintiffs are former employees of defendant Amax Coal Corporation[1] who were also formerly employed by Amax's predecessor, Price River Coal Company. Amax purchased and took over the coal operation of Price River in approximately May 1986. Prior to being hired by Amax, some of the plaintiffs were union employees of Price River and some were non-union employees.

Plaintiffs allege that while they were still working for Price River, representatives of Amax (including the individually named defendants) approached them and asked whether they would consider coming to work for Amax in non-union positions as soon as the Amax purchase of Price River's coal operation was completed. It is alleged in the Complaint that one or more of the individual defendants represented to the plaintiffs on numerous occasions that if they would come work for Amax, they would be given full credit for their prior service with Price River towards their various fringe benefits at Amax, including vacation, sick leave, severance and retirement benefits. It is further alleged that in reliance upon such representations by Amax's agents, plaintiffs accepted the offers of employment with Amax.

After commencing work for Amax, plaintiffs claim that they received notification from Amax that certain aspects of the representations made by the individual defendants regarding fringe benefits had been

---

1. Defendants note that Plaintiffs' are actually employed by Castle Gate Coal Company, which is a subsidiary of Amax Coal Industries, Inc., which in turn is a subsidiary of Amax, Inc. Castle Gate Coal Company is not named as a defendant. For purposes of consistency, hereinafter plaintiffs' current employer and defendant will simply be called "Amax."

adopted and ratified by Amax. It is further alleged in the Complaint that at some later date during the time plaintiffs were employed by Amax, certain of the representations which had been ratified regarding benefits were altered unilaterally.

In June 1989, Amax closed its coal operations and virtually all of its employees were laid off, including plaintiffs. Prior to ceasing its operations, Amax offered each plaintiff severance and other related benefits, but each plaintiff rejected such offers because the amounts were less than what the plaintiffs believed they were entitled to under the terms of the benefit promises allegedly offered and accepted by each plaintiff before becoming employed by Amax.

Plaintiffs brought an action in Utah Seventh Judicial District Court, Carbon County, alleging the following causes of action under Utah law against defendants: I) Violation of the Utah Racketeering Influenced and Criminal Enterprise Act ("RICE"); II) Breach of the covenant of good faith in contract and promissory estoppel; III) Breach of contract; IV) Fraud; V) Affirmative injunction compelling payment of benefits at least at the level Amax conceded it was obligated to pay at the time of the plant closure; VI) Specific performance; VII) Declaratory judgment. Defendants removed the case to this court on the basis that it involves federal subject matter jurisdiction under ERISA.[2]

Plaintiffs brought the pending Motion to Remand to State Court on the basis that no causes of action are brought against the trustee or administrator of Amax's benefit plan and that none of the causes of action seek to modify or interfere with or "relate to" Amax's employee benefit plan. Plaintiffs argue that the only implication with Amax's ERISA plan is in the calculation of damages. Defendants filed the pending Motion for Partial Summary Judgment in opposition to plaintiffs' Motion to Remand on the basis that plaintiffs' state law claims

"relate to" Amax's employee benefit plan, and as such they are expressly preempted by federal law under ERISA. 29 U.S.C.A. § 1144(a) (1985). Defendants seek summary judgment on all of plaintiffs' causes of action except as they relate to vacation benefits, which defendants concede is not preempted by ERISA.

## DISCUSSION

I. *Scope of "Relate to" language in ERISA*

■ ERISA preempts state law causes of action to the extent that those claims "relate to" any employee benefit plan. The relevant language of the ERISA preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has broadly interpreted the "relate to" language of section 1144(a) as encompassing any state law that has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987).

Plaintiffs' first argument against preemption is that ERISA only supersedes state law "which purports to regulate" an ERISA benefit plan, quoting from the definition of "state" in 29 U.S.C. § 1144(c)(2), which provides:

For purposes of this section:

. . . . .

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which *purports to regulate*, directly or indirectly, the terms and conditions of

---

2. Although plaintiffs' Complaint does not contain claims under ERISA, this court has subject matter jurisdiction under the "complete preemption" doctrine (a doctrine of jurisdiction, not a doctrine of preemption). This doctrine permits recharacterization of a state-law claim to a federal claim where federal preemption is asserted as a defense. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–66, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–94, 107 S.Ct. 2425, 2429–31, 96 L.Ed.2d 318 (1987).

employee benefit plans covered by this subchapter.

(Emphasis added). Plaintiffs maintain that because none of its seven state causes of action "purports to regulate" an ERISA plan, their Complaint is not preempted. Not only is plaintiffs argument contrary to the ordinary meaning of the "relate to" language in the preemption clause itself, namely section 1144(a) as opposed to section 1144(c)(2), but it has also been squarely rejected by the Supreme Court in *Shaw, supra,* and therefore must be rejected by this court. The *Shaw* Court stated:

Congress used the words "relate to" in § 514(a) [codified at 29 U.S.C. § 1144(a) ] in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from preemption in § 514(b), for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans.

Nor, given the legislative history, can § 514(a) be interpreted to preempt only state laws dealing with the subject matters covered by ERISA—reporting disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

463 U.S. at 98, 103 S.Ct. at 2900-01.

## II. *Promises which Relate to Benefits versus Benefit Plans*

■ Plaintiffs next argue that ERISA's expansive preemption clause does not apply to their various state law claims because the oral promises made by the individual defendants related only to benefits, and not to a "benefit plan," citing as support *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). Plaintiffs' argument in this regard is based on their contention that the promises were made before plaintiffs became employed by Amax and before they were part of Amax's benefit plan. In *Fort Halifax,* the Supreme Court upheld a Maine statute requiring employers to provide a severance payment to terminated employees under certain circumstances. In reaching its decision, the court noted that ERISA's preemption clause only applies to benefit plans and not simply to benefits. The Court explained that Congress's concern was with benefits that were part of a plan because "[o]nly a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." *Id.* at 11–12, 107 S.Ct. at 2217. The Court found that Maine's statute "neither establishes, not requires an employer to maintain, an employee benefit plan" and that "[t]he requirement of a one-time, lump-sum severance payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12, 107 S.Ct. at 2218.

This court is not persuaded by plaintiffs reliance on *Fort Halifax* and the argument that their claims are not based on a benefit plan. Even though plaintiffs were not members of Amax's plan at the time the alleged promises were made, the promises involved Amax's benefit *plan* to the extent that the plan was the vehicle for such promises to be fulfilled. The benefits at issue in *Fort Halifax* were wholly apart from any ERISA benefit plan in place by the employer, and the benefits did not impose any administrative burden on the employer in addition to that imposed by ERISA. In the instant case, Amax's ERISA plan would necessarily have to be amended to incorporate the alleged pre-employment promises made by the individual defendants. Furthermore, such plan amendments would impose additional administrative obligations upon Amax insofar as the plaintiffs' benefits would have to be calculated differently than other Amax employees. In sum, the distinction made in the *Fort Halifax* decision between "benefits" and "benefit plans" is based on a

factual circumstance that is not analogous to the facts in the instant case. *Cf. Pickering v. USX Corp.*, Civ. No. 87–C–838J, Slip op. at 7–12 (D.Utah April 24, 1990) (distinguishes *Fort Halifax* in holding that state law claims for fraud and implied contract are preempted by ERISA).

### III. *Loss of Remedy if State Claims Preempted*

■ Plaintiffs also argue that if preemption is found to exist, likely they will be left without a remedy under ERISA for the type of wrongs alleged. However, the Supreme Court in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987) specifically rejected such an argument, stating: "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Plaintiffs' Complaint does not raise any ERISA claims, and this court expresses no opinion on whether the wrongs alleged are redressable under ERISA.

### IV. *Pre–Employment Promises of Benefits as "Relating to" Employee Benefit Plan*

■ Plaintiffs' final argument against preemption and in favor of their Motion to Remand is that their state causes of action are too remotely "related to" the Amax benefit plan for preemption to apply. Admittedly, ERISA's preemption is not absolute and cases do exist where state causes of action have been considered too tenuously connected to an employee benefit plan to "relate to" such plan. *See e.g., Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989) (tort claim of intentional infliction of emotional distress against plan administrator not preempted). The specific issue involved in the instant case is whether state-based causes of action arising out of pre-employment oral promises of benefits "relate to" an ERISA benefit plan.

Plaintiffs argue that they are seeking damages for false promises made to induce them to work for Amax, and that the essence of their Complaint and the remedy they are seeking "is incidental, at best" to Amax's ERISA plan. Plaintiffs claim that the only implication that their Complaint has with the Amax plan is that certain plan provisions will be used in the computation of damages. In this regard, plaintiffs point out that they have not named the Amax benefit plan administrator as a defendant and that any damages they recover will be from the named defendants and not from the Amax benefit plan fund. As a preliminary matter, however, this court is convinced that the preemption issue cannot be resolved simply by determining whether or not plaintiff has named an ERISA plan administrator as one of the defendants. What needs to be examined is the impact the asserted claims may have upon the benefit plan rather than the form of the pleadings.

The case most heavily relied upon by plaintiffs, *Greenblatt v. Budd Co.*, 666 F.Supp. 735 (E.D.Pa.1987), held that a state law claim for fraudulent misrepresentation about employee benefits was not preempted by ERISA because the plaintiff's action was "only incidental" to the defendant's benefit plan. The plaintiff in that case was a management employee who was promised management retirement benefits at the time he voluntarily received a demotion for personal reasons. When the plaintiff eventually quit he was not paid retirement benefits at the level promised so he filed suit against his former employer. In holding that the state law claim was not preempted, the *Greenblatt* court reasoned that "the premise underlying this action was that plaintiff was deceived by the verbal statements made and the actions taken by his employer. That the subject of the deception concerned pension benefits is only incidental and not essential to the plaintiff's cause of action." *Id.* at 742.

The Seventh Circuit refused to follow the reasoning of the *Greenblatt* case in *Lister v. Stark*, 890 F.2d 941, 945 (7th Cir.1989). The court agreed with the lower court decision to "decline to follow [*Greenblatt*] in

light of the Supreme Court's decisions in *Pilot Life* and *Metropolitan Life Ins. Co.* as well as the overwhelming appellate court opinions to the contrary." *Lister v. Stark*, Civ. No. 88–C–10616 (N.D.Ill. Mar. 27, 1989) (available on WESTLAW at 1989 WL 31056). For similar reasons discussed herein, this court also declines to follow *Greenblatt.*

Defendants rely heavily upon the Tenth Circuit case of *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262 (10th Cir. 1988). In that case the plaintiff was a former employee of the defendant who went to work for a wholly owned subsidiary of the defendant but he continued to participate in defendant's ERISA pension plan. Thereafter, the defendant sold fifty percent of its interest in the subsidiary corporation but plaintiff was told that he would continue to participate in the same pension plan as before the sale. Two years later the defendant agreed during collective bargaining negotiations to increase its pension benefits from a factor of 1% to 1.3%. However, the partially owned subsidiary corporation in which plaintiff was employed did not adopt the increase. When plaintiff retired one year later, he filed state law claims for breach of contract and negligent misrepresentation against the defendant for not including him in the benefit increase and for not informing him that his pension benefits might be adversely affected by his transfer to defendant's subsidiary corporation. The Tenth Circuit held that plaintiffs' claims were primarily contractual in nature and were preempted by ERISA. The court stated that " 'principles of common law governing a claimed contract right to have the plan modified clearly "relates to" [sic] the plan and that state law in that area is preempted.' " *Id.* at 1264 (quoting *Anderson v. John Morrell & Co.*, 830 F.2d 872, 875 (8th Cir.1987)).

Another case relied upon by defendants is *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir.1989). In that case, the plaintiff had been an employee of defendant B.F. Goodrich company for twenty-six years when he purchased a franchise from defendant. The franchise agreement expressly provided that plaintiff would get severance benefits from defendant but that he would no longer be a participant in defendant's employee benefit plan. Plaintiff brought suit against defendant claiming that defendant had orally represented to him that he would continue to receive full retirement benefits, and that he had relied upon such representation in accepting the franchise agreement. The Fifth Circuit held that plaintiffs' state law breach of contract claim was preempted by ERISA. *Id.* at 1294; *see also Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir. 1989) (state law claim of breach of oral contract preempted by ERISA).

Plaintiffs in the instant case argue that *Straub* and *Cefalu* are distinguishable in that the plaintiffs in those cases were members or former members of the ERISA plan administered by the employer whom they were suing. Plaintiffs claim that they were not yet members of the Amax benefit plan at the time of the alleged misrepresentations. For several reasons, the court does not find that plaintiffs' argument in this regard supports the conclusion that their claims are not preempted. First, the defendants' acts complained of in plaintiffs' Complaint are not limited to pre-employment conversations. In fact, plaintiffs allege that they "received notification from AMAX headquarters after commencing work for AMAX that certain aspects of the representations made by the individual Defendants regarding fringe benefits had been adopted and ratified by Amax." Complaint ¶ 23. Plaintiffs further allege that thereafter "certain of the manifestations of AMAX'[s] ratification and/or recognition of the Plaintiffs' rights to fringe benefits and deferred compensation were unilaterally altered." Complaint ¶ 24. A fair reading of plaintiffs' own Complaint is that the act causing them injury was not only the pre-employment promises by the individual defendants, but also the unilateral alteration of those promises during the time that plaintiffs were employed by Amax *and while they were participants in Amax's ERISA benefit plan.* In this regard, plaintiffs' state law claims arise from the administration of benefits under a plan and are

thereby preempted even under a narrow interpretation of ERISA's preemption provision. *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir.1987); *Walker v. Mountain States Tel. & Tel. Co.*, Civ. No. 87–C–1009G, Slip op. at 3–5 (D.Utah April 20, 1989) (state law claims for improper processing of benefits preempted by ERISA).

Even assuming that plaintiffs' alleged injuries arose solely from pre-employment promises by the individual defendants, the court believes that the "relate to" preemption language of section 1144(a) is expansive enough to encompass state law claims which may be brought to recover for such promises. In the case at bar, the alleged pre-employment promises certainly "relate to" Amax's plan in the ordinary meaning of those words inasmuch as a special modification was to have been made to the plan in order for such promises to be fulfilled. Furthermore, ERISA clearly preempts state law claims that relate to *current* or *former* employee benefit plans, and plaintiffs' argument that state law claims are not preempted if they relate to *future* or prospective plans is not a persuasive distinction to the court and is without supporting authority. *Cf. Pane v. RCA Corp.*, 667 F.Supp. 168, 172 (D.N.J.1987), *aff'd*, 868 F.2d 631 (3rd Cir.1989) (state law claims arising from defendants' failure to include employee in severance benefit plan preempted "regardless of whether plaintiff was actually covered by the plan").

The only case cited by plaintiffs which involves preemployment promises of future benefits is distinguishable inasmuch as the defendant in that case was the plaintiff's former employer, not its prospective employer, and no benefit plan existed at all regarding the future benefits promised. In *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985), plaintiffs were employees of defendant Gulf Oil Corporation who went to work for Thrifty Oil when Gulf sold its refinery to Thrifty. Plaintiffs alleged that Gulf, without their consent, negotiated with Thrifty over the terms of their future employment with Thrifty, and that Gulf joined with Thrifty to coerce them into accepting a new employment contract with Thrifty that contained less favorable contract terms—namely a loss of all severance benefits. Plaintiffs' state law contract and tort claims included allegations that defendants told them that they were not entitled to severance pay from Gulf, when they actually were, and that the terms of their employment with Thrifty were "substantially as favorable" as those with Gulf. The Ninth Circuit held that the contract claim was preempted by ERISA. *Id.* at 1505. With regard to the state tort claims, the court held as follows:

> Insofar as the [state tort claims] allege[ ] the loss of benefits that plaintiffs had already accumulated while working for Gulf, it, like the first claim [breach of contract], is one for benefits under an employee welfare benefit plan and is preempted by ERISA. Insofar as [those claims] allege the loss of prospective benefits, however, we find that [they are] not preempted.

> The claim for prospective benefits does not allege the denial of benefits under a benefit plan; rather, it alleges that Gulf's tortious actions prevented the existence of such a plan in plaintiffs' employment with Thrifty. It does not allege the violation of duties created by any welfare plan; rather it alleges the violation of Gulf's duties as a past employer.

*Id.*

In *Scott*, state tort claims against the plaintiffs' former employer were preempted insofar as those claims involved benefits that were the subject of an ERISA plan. The state law tort claims not preempted were not the subject of any benefit plan. *Scott* does not support plaintiffs' position because unlike the plan of the prospective employer in *Scott*, Amax's plan provides for severance benefits.[3] Accordingly,

---

**3.** *See also Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990) (held that state law fraud and misrepresentation claims preempted by ERISA, and stated "We doubt the continuing validity of *Scott,* however, in light of the Supreme Court's subsequent decisions in *Pilot Life* ... and *Metropolitan Life Ins. Co. v. Taylor* ").

plaintiffs' state law claims which seek an increase in those severance benefits "relate to" an employee benefit plan.

Based on the foregoing, the court concludes that the alleged pre-employment promises made to plaintiffs were not merely incidental to Amax's employment benefit plan. To the contrary, such promises relate directly to the Amax plan inasmuch as fulfillment of the alleged promises would (and allegedly temporarily did) require a special amendment to the Amax plan in favor of plaintiffs. Under these circumstances, the court is persuaded that the weight of authority favors defendants' position that plaintiffs' state law claims sufficiently "relate to" Amax's benefit plan and are therefore preempted by ERISA. Accordingly, defendants' Motion for Partial Summary Judgment is GRANTED and plaintiffs' Motion to Remand is DENIED except as the Complaint seeks recovery for vacation benefits, and to that extent only it is remanded to state court.

IT IS SO ORDERED.