**Don A. CERASOLI, Plaintiff,**

v.

**XOMED, INC., a Subsidiary of Xomed Surgical Products, Defendant.**

**No. 96–CV–6341L.**

United States District Court,
W.D. New York.

Jan. 15, 1997.

Craig L. McGrain, Patrick Tomovic, Hodgson, Russ, Andrews, Woods & Goodyear, Rochester, NY, for plaintiff.

Michael R. Law, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, Richard N. Margulies, Karen Ibach Bowden, Mahoney, Adams & Criser, P.A., Jacksonville, FL, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Don A. Cerasoli, commenced this action in New York State Supreme Court, Monroe County, on July 1, 1996. The complaint asserted causes of action for breach of contract, negligent misrepresentation, and intentional misrepresentation by defendants Xomed, Inc., Xomed Surgical Products, and Merocel/Xomed Holding, Inc. (collectively "Xomed") in connection with plaintiff's long-term disability benefits pursuant to his employment contract with Xomed.

Xomed removed the action to this court on July 29, 1996. The grounds for removal were diversity of citizenship under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331. The basis for the latter ground was that the action falls within the scope of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (presumably in the alternative) to transfer venue of this action to the United States District Court for the Middle District of Florida. Plaintiff has moved for leave to amend the complaint to add a claim under ERISA.

## BACKGROUND

The complaint alleges that defendants are corporations engaged in the business of manufacturing and selling medical and pharmaceutical products. Defendants are incorporated under the laws of Delaware and have their principal place of business in Florida.[1] Plaintiff is a citizen of New York residing in Webster, New York.

Plaintiff began working for Xomed in 1995 as a sales representative in Xomed's Northeast Region. His employment contract, which plaintiff signed on March 9, 1995, set

---

1. The complaint states that defendants are incorporated under the laws of Connecticut. Defendants have filed a "Notice of Correction" stating that they are incorporated under the laws of Delaware, and plaintiff does not appear to challenge this assertion.

forth various benefits, including medical and dental insurance, life insurance, and short- and long-term disability insurance. Plaintiff alleges that on his first day of work, March 20, 1995, he asked his supervisor, Terry Schroeder, about the effective date of his benefits, including his various insurance benefits. Plaintiff claims that in his presence, Schroeder called Xomed's Human Resources Department in Florida, and after speaking to someone there, told plaintiff that his benefits were effective immediately, *i.e.*, as of March 20. Plaintiff alleges that in reliance on this information, he decided not to purchase any additional coverage.

The complaint alleges that during the course of, and in connection with, his employment, he was seriously and permanently injured in an accident while using exercise equipment at a Philadelphia hotel on May 12, 1995, about 53 days after he commenced employment. His physicians advised him that his injuries would prevent him from resuming his work as a sales representative.

Plaintiff then filed a claim with Xomed for long-term disability benefits. Subsequently, however, Xomed informed him that the insurance carrier, the Paul Revere Life Insurance Company, was disclaiming coverage because the policy provided for an initial waiting period of ninety days which had not elapsed at the time of plaintiff's accident. Plaintiff alleges that he then called Xomed's Human Resources Department and was told that they had always been aware that plaintiff's long-term disability coverage did not take effect until ninety days after his employment began. Either in that same call or in another telephone call, plaintiff alleges that Xomed personnel told him that they had made a mistake when they advised him on March 20, 1995 that his benefits package became effective immediately. Plaintiff further alleges that representatives of the Human Resources Department later claimed that they had always advised him of the ninety-day waiting period, and denied having made or admitted to any error or mistake.

Based on these allegations, plaintiff asserts three causes of action. The first alleges that Xomed breached plaintiff's employment con-tract. The second alleges that the contract created a "special relationship" between plaintiff and Xomed that obligated Xomed to provide him with accurate information about his benefits, and that Xomed negligently misrepresented to him that his long-term disability benefits became effective on March 20, 1995. The third cause of action alleges that Xomed intentionally misrepresented those matters to him. Based on these claims, plaintiff seeks $2.2 million in actual damages, and $10 million in incidental, consequential, and punitive damages.

## DISCUSSION

### I. Defendants' Motion to Change Venue

Defendant moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Middle District of Florida. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision whether to grant a transfer under this section is committed to the sound discretion of the District Court. *See Filmline (Cross–Country) Productions, Inc. v. United Artists, Corp.*, 865 F.2d 513, 520 (2d Cir.1989). The Court must weigh a number of competing factors, including: the plaintiff's choice of forum; the place where the operative facts underlying the action occurred; the convenience and relative means of the parties; the convenience of material witnesses; the availability of process to compel the attendance of unwilling witnesses; the relative ease of access to sources of proof; the forum's familiarity with the governing law; trial efficiency; and the interests of justice. *See Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y. 1990); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

In general, a defendant moving for a change of venue bears the "burden of making out a strong case for a transfer." *Filmline*, 865 F.2d at 521 (quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950)). A plaintiff's choice of

forum will not lightly be disturbed, especially where, as here, the plaintiff resides in the judicial district where the suit is filed. *See Miceli v. Stromer*, 675 F.Supp. 1559, 1565 (D.Colo.1987); *Sorrels Steel Co. v. Great Southwest Corp.*, 651 F.Supp. 623, 6289 (S.D.Miss.1986); *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923 (W.D.Mo.1985). To prevail on the motion, defendant must make a "clear showing" that the litigation in the proposed transferee district would be more convenient and would better serve the interests of justice. *Y4 Design, Ltd. v. Regensteiner Publishing Enterprises*, 428 F.Supp. 1067, 1070 (S.D.N.Y.1977).

■ Applying these factors to the case at bar, I find that defendants have failed to carry their burden of making out a strong case for a transfer. Some factors point toward a transfer, some point against it, and some are neutral.

As to the locus of the operative facts, the most significant event—the alleged representation by Schroeder on March 20, 1995 that plaintiff's benefits had taken effect that day—occurred in Schroeder's office in Lawrenceville, Pennsylvania, and thus does not weigh in favor of either a New York or Florida forum. Most of the other relevant events consisted of telephone conversations or correspondence between plaintiff in New York and defendants in Florida, so this factor is generally neutral.[2]

Consideration of the relative convenience and means of the parties clearly weighs against a transfer. For one thing, defendants have not disputed plaintiff's contention that he is still suffering from the effects of his injury. It could therefore be difficult for him to travel to Florida if his presence were necessary there for trial or some other proceeding. In addition, Xomed, a corporation, likely has greater financial means to litigate the action in New York than plaintiff does to litigate it in Florida.

The convenience of material witnesses weighs in favor of a Florida venue, but not to a great extent. From the parties' papers, it

does not appear that there would be a great many witnesses in this case. In addition, while defendants have identified several likely witnesses currently living in Florida, Schroeder—certainly a key witness—lives in Pennsylvania, and plaintiff's treating physicians reside in New York. Although defendants are correct that the physicians would only have to testify in the event that liability is found, I do not believe that that is a reason to discount the convenience to them entirely. In addition, defendant's statement that the convenience of expert witnesses is entitled to little weight is inapposite. The case cited by defendants in support of that proposition, *Cent. Group, S.p.A. v. OroAmerica, Inc.*, 822 F.Supp. 1058 (S.D.N.Y.1993), involved the availability of expert witnesses on jewelry design, who, the court observed, were available in both Los Angeles and New York. *Id.* at 1062. In the case at bar, plaintiff could not simply substitute the testimony of his treating physicians with that of a physician in Florida who had never seen him prior to this litigation.

The availability of process to compel the attendance of unwilling witnesses also favors a Florida venue. However, there is nothing in the record at this point that suggests that any of the non-party witnesses would not be willing to testify. In addition, Schroeder (who no longer works for Xomed) lives in Pennsylvania, and therefore could not be compelled to testify in either forum.

The ease of access to sources of proof is not entitled to great weight under the facts of this case. Other than live witnesses, most of the proof in this case appears likely to be documentary in nature. It also appears unlikely that this proof would be voluminous. Even accepting defendants' contention that most of the relevant records are located in Xomed's offices in Florida, then, this factor is of little significance in this case.

The plaintiff's choice of forum obviously weighs against transfer. As noted, the importance of this factor is heightened when the plaintiff resides in his chosen forum.

---

**2.** Although defendants allege that plaintiff interviewed at Xomed's Jacksonville, Florida office on February 27, 1995, at which time the parties "discussed" the benefits package offered to

Xomed employees, that does not appear to be a highly significant event in this case. Plaintiff's claims are based mostly on the events that occurred on March 20, 1995 and afterwards.

As explained below, plaintiff may amend his complaint as of right to add an ERISA claim. Since ERISA is a federal statute, both this court and the Florida court are familiar with the governing law. Although defendants contend that they may file a counterclaim under Florida law alleging that plaintiff unlawfully made surreptitious tape recordings of telephone conversations with Florida-based Xomed employees, at this point this is, as defendants acknowledge, no more than a "potential" issue. Defendants' Memorandum of Law in Support of Motion to Transfer Venue at 14.

Considerations of efficiency and the interests of justice also are neutral factors here. While defendants contend that this case would likely reach trial sooner in Florida, from defendants' description of the Middle District of Florida's docket and case management, it appears that any differences between the two forums in this regard would be relatively minor at most.

In short, although some factors may weigh in favor of a Florida venue for this action, defendants have fallen far short of making out a "strong case" for transfer. Given the judicial policy against lightly disturbing a plaintiff's choice of forum, defendant's motion to transfer venue must be denied.

## II. Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's state law claims for breach of contract, negligent misrepresentation, and intentional misrepresentation on the ground that they are preempted by ERISA. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." I believe that plaintiff's claims are preempted and he must proceed, if at all, under ERISA.

"The Supreme Court has consistently afforded a broad, though not absolute, reading to this preemption provision." *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 9 (2d Cir. 1992). Under this reading, "a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct.

1549, 1553, 95 L.Ed.2d 39 (1987). "[T]he word 'related' must not be taken literally," however. *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992). "[S]tate law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

In the case at bar, plaintiff advances several arguments in support of his contention that his state law claims are not preempted by ERISA. First, plaintiff contends, he does not seek disability benefits, nor does he allege that he is entitled to benefits. The gist of his claims, plaintiff asserts, is that defendants told him that he was eligible for long-term disability benefits as of March 20, 1995, when in fact he was not. Plaintiff also notes that he is not suing the plan itself or the plan administrator, but his employer. Thus, any recovery would not come out of plan assets, but from Xomed directly.

Plaintiff also contends that even if his claims do fall within the scope of ERISA, there is no preemption because the factual basis for his suit, *i.e.,* defendants' alleged contractual duties and misrepresentations, is independent of the rights and duties created by the plan. Finally, plaintiff maintains that there is no proof at this stage that an ERISA plan even exists.

■ With respect to plaintiff's breach of contract claim, I find that ERISA preemption is clearly applicable. As stated in plaintiff's memorandum of law, the theory of this cause of action is that "[t]he Contract required Xomed to make payments which it failed to do." The alleged breach, then, consists of defendants' failure to provide plaintiff with benefits under the long-term disability plan. In that respect, this case is clearly distinguishable from *Wilcott v. Matlack, Inc.,* 64 F.3d 1458 (10th Cir.1995), upon which plaintiff relies. In *Wilcott,* the court held that a claim alleging that the defendant breached the plaintiff's employment contract by terminating the plaintiff without regard to his performance was not preempted by

ERISA because it was based on a contract "enforceable independently of any additional legal rights plaintiff may have had under the ERISA plan." *Id.* at 1463. The only contractual right that plaintiff seeks to enforce here, however, is his alleged right to disability benefits. *See Smith,* 959 F.2d at 10 (court had "no difficulty in concluding" that contract claim alleging breach of employer's oral promise to pay pension-related benefits was preempted by ERISA); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295 (5th Cir.1989) (ERISA preempted claim alleging breach of contract for failure to give plaintiff franchisee benefits equal to those of defendant's salaried employees); *Straub v. Western Union Tel. Co.,* 851 F.2d 1262, 1264 (10th Cir.1988) (plaintiff's "argument that ERISA cannot preempt claims that are primarily contractual in nature must fail"; district court properly dismissed breach of contract claim against former employer); *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.) (to the extent that plaintiff sought recovery from former employer for breach of contract arising from employer's refusal to pay plaintiff early retirement benefits, claim was preempted by ERISA), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

■ Furthermore, it is immaterial that plaintiff styles this claim as a claim for breach of contract under New York law. "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell,* 944 F.2d at 1276; *accord Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 794 n. 3 (1st Cir.1995). That is precisely what plaintiff seeks here.

■ The issue is less clear-cut with respect to plaintiff's misrepresentation claims. Many courts have found claims alleging benefit-related fraud or misrepresentations to be preempted by ERISA, *see, e.g., Wilcott,* 64 F.3d at 1463–64; *Carlo,* 49 F.3d at 794–95; *Sanson v. General Motors Corp.,* 966 F.2d 618, 621 (11th Cir.1992); *Smith,* 959 F.2d at 10; *Pohl,* 956 F.2d at 128; *Cromwell,* 944 F.2d at 1276 (collecting cases); *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755, 757–58 (5th Cir.1990); *Lister v. Stark,* 890 F.2d 941, 945–46 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791, 794 (11th Cir.1989); *Straub,* 851 F.2d at 1263–64; *Spalding v. Reliance Std. Life Ins. Co.,* 835 F.Supp. 23, 29–30 (D.Mass.1993); *Anglund v. American Tel. and Tel. Co.,* 828 F.Supp. 809, 814 (D.Colo.1993); *Barkdoll v. H & W Motor Exp. Co.,* 820 F.Supp. 410, 415 (N.D.Iowa 1993); *Sandler v. Marconi Circuit Tech. Corp.,* 814 F.Supp. 263, 265 (E.D.N.Y.1993); *Roth v. The BFI Long–Term Disability Group Ins. Plan,* No. 91–2563, 1992 WL 300842 *3 (E.D.La. Oct. 14, 1992); *Bernatowicz v. Colgate–Palmolive Co.,* 785 F.Supp. 488, 492–93 (D.N.J.), *aff'd,* 981 F.2d 1246 (3d Cir.1992); *Carter v. Amax Coal Corp.,* 748 F.Supp. 812, 815–19 (D.Utah 1990), although courts in several other cases have reached the opposite conclusion, *see, e.g., Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 244–48 (5th Cir.1990); *Johnson v. Antioch Univ.,* No. 91–0133, 1992 WL 88028 *5 (D.D.C. Apr. 15, 1992); *Sandler v. New York News, Inc.,* 721 F.Supp. 506, 512 (S.D.N.Y.1989); *McNamee v. Bethlehem Steel Corp.,* 692 F.Supp. 1477, 1479 (E.D.N.Y. 1988); *Greenblatt v. Budd Co.,* 666 F.Supp. 735, 742 (E.D.Pa.1987).

The different outcomes of these cases, of course, are to a great extent the result of their differing facts. None of the cases cited by the parties or found by the court is completely on all fours with this one. Nevertheless, certain principles can be gleaned from the case law, and in my view those principles support a finding that plaintiff's misrepresentation claims are preempted by ERISA.

First, the alleged misrepresentations in this case relate directly to plaintiff's benefits under the long-term disability plan. *See Wilcott,* 64 F.3d at 1464 (misrepresentation claims were preempted where the "alleged misrepresentations relate[d] directly to the nature of plaintiff's rights under the plan"); *Smith,* 959 F.2d at 10 (negligent-misrepresentation claim preempted where "the oral representation underlying this suit deal[t] expressly and exclusively with the [plaintiff's] benefits"); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1219 (5th Cir.) (fraud claims

were preempted since defendants' conduct "relate[d] directly to the operation of an ERISA plan"), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); *Carter,* 748 F.Supp. at 815 (employer's alleged promises related to its benefit plan "to the extent that the plan was the vehicle for such promises to be fulfilled"). The specific misrepresentation alleged is defendants' assurance to plaintiff that he was covered under the plan as of March 20, 1995.

In addition, the harm flowing from plaintiff's reliance on those misrepresentations is his lack of coverage. This case is therefore distinguishable from cases in which the plaintiff, in reliance on the defendant's statements concerning benefits, took or failed to take some action that did not directly involve benefits; *see, e.g., Sandler,* 721 F.Supp. at 508 (plaintiff relied upon erroneous overstatement as to value of his pension in electing to accept employer's buyout offer; though contract claims seeking increased benefits were preempted, misrepresentation claim was not, since "[a]t base, it [wa]s a suit over lost employment"); *McNamee,* 692 F.Supp. at 1478 (plaintiff accepted reemployment with defendant in reliance on representation that defendant would "bridge" his break in service so that he would qualify for fully vested pension). The harm in this case, then, was not caused simply by plaintiff's acceptance of Xomed's offer of employment, but by his failure to obtain long-term disability insurance to cover the ninety-day waiting period.

■ Plaintiff contends that his claim is not preempted because he is suing his employer directly for damages, rather than suing the plan administrator for payment of benefits. Several courts, however, including the Second Circuit, have found claims to be preempted notwithstanding that the claims were asserted only against the plaintiff's employer. In *Smith,* 959 F.2d at 12, the court rejected the plaintiff's argument that he "was merely suing for additional benefits from the employer, rather than the plan." Though the court stated that the plaintiff had "present[ed] that claim attractively, if not sympathetically," the court held that "[t]o accommodate such a claim ... would irreparably undermine ERISA and would seriously dis-

courage employers from adopting such plans." *Id. See also Stiltner v. Beretta U.S.A. Corp.,* 74 F.3d 1473, 1480 (4th Cir.) (though court did not need to decide issue, it was "very likely" that contract claim against employer was preempted by ERISA, "even though it [sought] to recover [benefits] not from the plan itself, but from the employer directly"), *cert. denied,* —— U.S. ——, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996); *Lister,* 890 F.2d at 942 (even if plaintiff amended complaint to drop pension trust defendants and retain only claim against employer, claim would remain preempted; rejecting *Greenblatt, supra* ); *Cefalu,* 871 F.2d at 1292–93 (rejecting plaintiff's argument that claim was not preempted because he was only suing defendant in its capacity as his former employer, and was not seeking recovery from assets of the plan); *Stiltner v. Beretta U.S.A. Corp.,* 844 F.Supp. 242, 245 n. 5 (D.Md.1994) ("protecting the financial health of employers (the sponsors of benefit plans) is of equally vital importance in assuring the long term continuance of the plans" as is the interest in protecting the actuarial soundness of the plans themselves), *aff'd,* 74 F.3d 1473 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996); *Bernatowicz,* 785 F.Supp. at 493 (declining to follow *Greenblatt* ); *Carter,* 748 F.Supp. at 816 ("the preemption issue cannot be resolved simply by determining whether or not plaintiff has named an ERISA plan administrator as one of the defendants").

Another factor that suggests that preemption applies is the fact that the damages in this case would be measured by the net amount of benefits that plaintiff would have received had he obtained an alternative source of long-term disability coverage. Although strictly speaking this would not require reference to the Xomed plan, in effect it would amount to the same thing, since the coverage that plaintiff alleges he would have obtained had he known about the ninety-day waiting period would simply have been a substitute for the Xomed plan. The fact that damages are measured according to the amount of lost benefits has been cited by several courts as indicating that a claim relates to an ERISA plan for purposes of preemption analysis. *See, e.g., Carlo,* 49 F.3d at

794; *Sanson,* 966 F.2d at 621; *Cefalu,* 871 F.2d at 1294; *Williams on Behalf of Williams v. Jackson Stone Co.,* 867 F.Supp. 454, 459 (S.D.Miss.1994), *aff'd,* 85 F.3d 621 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 97, 136 L.Ed.2d 52 (1996); *Bernatowicz,* 785 F.Supp. at 493 (although plaintiffs asserted that they were not challenging defendant's determinations regarding their eligibility for benefits, claims for negligent misrepresentation were preempted, since lost benefits were clearly a component of the recovery plaintiffs sought); *Haggard v. Armstrong Rubber Co.,* 767 F.Supp. 119, 122 (M.D.La.1991); *see also Anglund,* 828 F.Supp. at 814 (negligent misrepresentation claim was preempted notwithstanding fact that plaintiff sought only reliance and expectation damages, not the value of her benefits). In addition, "to establish liability, plaintiff would have to show the reasonableness of his reliance on the alleged misrepresentations . . ., which would require resort to the terms of the ERISA plan." *Wilcott,* 64 F.3d at 1464.

As stated, there appear to be no reported cases squarely on point, but the court has found three cases that are factually similar to this one in that the plaintiffs in those cases alleged that they incurred medical expenses that they were forced to pay themselves because they had been led or induced to believe that they had insurance coverage by their employers or representatives of the insurance carriers.

In *Pohl,* 956 F.2d 126, the plaintiffs' minor daughter developed a psychiatric illness for which her doctor advised a course of treatment in a hospital. The defendant, which administered the health insurance plan sponsored by the employer of the plaintiff father, advised the plaintiffs that the plan would cover eighty percent of the cost of the treatment, but in fact the plan limited payment for this type of treatment to $10,000. In reliance on defendant's representations, plaintiffs went ahead with the treatment, for which they were billed $19,000. The plaintiffs were forced to borrow money to pay the bill, and they sued the defendant in state court for negligent misrepresentation.

After the case was removed to federal court, the district court entered judgment for the defendant on the ground that ERISA preempted plaintiffs' claim but provided no remedy for the alleged wrongdoing. On appeal, the Seventh Circuit affirmed. Although recognizing that "the word 'related' must not be taken literally," the court held that the plaintiffs' action did relate to an ERISA plan. *Id.* at 128. The court stated that "[i]t is true that the Pohls are not seeking to enlarge coverage as such; but any money they obtained from this suit would be functionally a benefit to which the written terms of their plan do not entitle them. This type of end run is regularly rebuffed." *Id.* (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

In *Perkins v. Time Ins. Co.,* 898 F.2d 470 (5th Cir.1990), the plaintiff, who was the manager and part owner of a company, was solicited by the defendant insurance agent to participate in a group insurance plan offered by the defendant insurance company. Relying on the agent's assurances that the policy would cover surgery to correct the plaintiff's daughter's congenital eye defects, the plaintiff terminated his existing coverage, which had provided for his daughter's condition, and elected to participate in the defendant's policy, which his company then adopted as its employee welfare benefit plan. The plaintiff then proceeded with his daughter's surgery, but his claim for benefits was denied by the defendant company on the ground that the eye problem was a preexisting condition excluded from the plan's coverage.

The plaintiff sued the insurance company and agent in state court, alleging tortious breach of contract based on the agent's alleged misrepresentations. The case was removed to federal court, and the district court granted summary judgment for the defendants on the ground that plaintiff's claims were preempted by ERISA.

On appeal, the Fifth Circuit affirmed. The court stated that "[i]t cannot be gainsaid that Perkins' claims against [the insurance company] 'relate to' an employee benefits plan and thus fall within the scope of ERISA's preemption clause." *Id.* at 473. The court also held, however, that the claim against the

agent was not preempted because it "d[id] not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) ..." *Id.*

In *Johnson,* 1992 WL 88028, the plaintiff was employed by the defendant from 1979 until 1987. In 1986, she underwent surgery for a brain tumor. The surgery was covered by the defendant's then-insurance carrier. After the surgery, the plaintiff returned to work, and later in 1986, her employer changed its insurance carrier. During the negotiations with the new carrier ("Mutual"), plaintiff's labor union allegedly asked whether Mutual's plan would provide long-term disability coverage for the plaintiff. Mutual allegedly responded that it would.

Due to the plaintiff's continuing health problems, her employer allegedly "encouraged" her to resign. She alleged that after receiving further assurances that she would continue to be covered under the Mutual policy, she did resign. When she applied to Mutual for long-term disability benefits, however, she was advised that she was not eligible due to her preexisting condition.

The plaintiff sued her employer and Mutual, asserting various claims under state law, including breach of contract and misrepresentation. She admitted that she was not eligible for benefits under the plan because of her preexisting condition, but sought to recover damages flowing from her exclusion from the plan. On the defendants' motion to dismiss, the court held that the contract claim was preempted by ERISA because of the "inseparable relationship between the plan itself and the alleged breach of contract." 1992 WL 88028 *4. The court also held that the misrepresentation claim was not preempted, however. The court stated that "where the plaintiff alleges misrepresentations prior to the plan formation and the damages sought are from the insurer and the employer rather than from the plan itself, the causes of action relate to the representatives' actions rather than to the employee benefits plan." *Id.* at *6.

As in *Pohl,* plaintiff in the case at bar is essentially seeking to make an "end run" around ERISA's comprehensive reach. The damages that plaintiff seeks, though flowing from his employer rather than the plan, are functionally equivalent to the benefits that he would have received had he been covered by either Xomed's or another long-term disability plan. In addition, while the plaintiffs in *Pohl* and *Perkins* sued their plans rather than their employers, that distinction, as noted earlier, is of no consequence.

The court in *Johnson* did state that "a finding that a plan is only incidental to the claim asserted, because the claim does not require relief directly from the plan itself but rather from the wrongdoers, does not preempt that claim under ERISA." 1992 WL 88028 *5. The court's holding that the plaintiff's misrepresentation claim was not preempted, however, was based not just on the fact that the plan was not a defendant, but also on the ground that the alleged misrepresentations were all made *prior* to the implementation of the plan. *Id.* at *3, *6. The rationale behind this (which I neither endorse nor reject) is that no fiduciary duty exists until a plan has been adopted, and therefore a claim based on pre-adoption statements does not fall within the scope of ERISA. *See Isaac v. Life Investors Ins. Co. of America,* 749 F.Supp. 855, 863 (E.D.Tenn. 1990) (plaintiffs' misrepresentation claim against insurer was not preempted by ERISA, since it alleged misrepresentation prior to plaintiffs' participation in plan); *see also Fulk v. Hartford Life Ins. Co.,* 839 F.Supp. 1181, 1187 (M.D.N.C.1993) (state law claims would not be preempted, if ever, until plaintiff was determined to have been an ERISA plan participant at time of alleged misrepresentation); *but see Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157, 160–61 (6th Cir.1989) (rejecting that view with little comment) (2–1 decision), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). At any rate, to the extent that *Johnson* can be read as holding that a claim is not subject to preemption simply because it is asserted only against the plaintiff's employer, I decline to follow that holding for the reasons already stated. *See DeVoll v. Burdick Painting, Inc.,* No. C–92–1661, 1993 WL 144715 *4 (N.D.Cal. Jan. 26, 1993) (declining to follow *Johnson*), *aff'd,* 35 F.3d 408 (9th

Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1381, 131 L.Ed.2d 234 (1995).

I am also unpersuaded by plaintiff's assertion that there is no preemption because at this stage there is no proof that a plan exists. The complaint alleges that plaintiff sought benefits under the Paul Revere long-term disability policy, which he alleges were promised to him in his employment contract. It is obvious, therefore, that plaintiff alleges that Xomed maintained a program for the purpose of providing disability and other benefits. *See Grimo v. Blue Cross/Blue Shield, of Vermont,* 34 F.3d 148, 151 (2d Cir.1994); *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982).

To allow these claims to proceed, then, would in effect allow plaintiff to seek damages based on what amounts to an oral amendment of the long-term disability plan, which is not permissible under ERISA; *see Cefalu,* 871 F.2d at 1297 ("oral agreement cannot be the basis of a cause of action under ERISA" because "ERISA expressly requires that employee benefit plans be 'established and maintained pursuant to a written instrument'") (quoting 29 U.S.C. § 1102(a)(1)). Although plaintiff stresses that he is not seeking to recover from the plan itself, as a practical matter he is seeking to hold Xomed to its alleged promises. Courts frown upon allowing plaintiffs to "resort[ ] to state law to avail themselves of an alternative cause of action to collect benefits . . ." *Airparts Co. v. Custom Benefit Serv. of Austin, Inc.,* 28 F.3d 1062, 1065 (10th Cir.1994); *see also Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556–57 (policies underlying ERISA would be "completely undermined" if participants could obtain remedies under state law that Congress has rejected). Given the "deliberately expansive" preemption provisions of ERISA, *Pilot Life,* 481 U.S. at 46, 107 S.Ct. at 1552, I find that plaintiff's attempt to assert these causes of action under state law are preempted by ERISA.

---

**3.** Although the proposed amended complaint alleges that "[d]efendants have violated 29 U.S.C. § 1132(a)(3)," *see* Declaration of Craig L. McGrain, Esq. in Support of Motion to Amend the Complaint Ex. A ¶ 64, presumably plaintiff intended to allege a violation of § 1104, which sets forth the fiduciary duties of plan administrators. Section 1132(a)(3) provides a right of action to redress violations of ERISA.

### III. Plaintiff's Motion to Amend

Plaintiff requests that, in the event that the court finds his state-law claims preempted, he be allowed to amend his complaint to add a cause of action under ERISA. The proposed new claim alleges that defendants' alleged misrepresentations to plaintiff constituted a breach of their fiduciary duties to him under 29 U.S.C. § 1104.[3]

As defendants concede, however, plaintiff does not need leave from the court to amend his complaint at this stage. Rule 15(a) permits a party to amend his pleading "as a matter of course at any time before a responsive pleading is served . . ." Under Rule 7(a), a motion to dismiss is not considered a responsive pleading. Since defendants have not yet answered the complaint, plaintiff may file an amended complaint adding an ERISA claim. *See* 3 James Wm. Moore, Moore's Federal Practice ¶ 15.07[2] (2d ed. 1996). While it is not clear at this stage what relief, if any, might be available to him under ERISA, since extra contractual benefits are not available in suits under ERISA, *see Lee v. Burkhart,* 991 F.2d 1004, 1009–11 (2d Cir.1993), that issue is not presently before me.

### CONCLUSION

Defendants' motion to dismiss the complaint (Item 5) is granted. Defendants' motion to transfer venue (Item 21) is denied.

Plaintiff's motion for leave to amend the complaint (Item 15) is granted. Plaintiff shall file an amended complaint within fifteen (15) days of the date of entry of this decision and order.

IT IS SO ORDERED.