David AHERN, Plaintiff,

v.

NORTHERN TECHNOLOGIES INTERNATIONAL CORPORATION and G. Patrick Lynch, Defendants.

No. 01–CV–6527L.

United States District Court,
W.D. New York.

May 24, 2002.

J. Nelson Thomas, Dolin, Thomas & Solomon, LLP, Rochester, NY, Christian D. Hancey, Nixon Peabody, LLP, Rochester, NY, for David Ahern.

Robert J. Tracy, Oppenheimer, Wolff & Donnelly, New York City, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Defendant Northern Technologies International Corporation ("NTI") and its president, Patrick Lynch ("Lynch") (collectively, "defendants") move to stay the instant action and compel plaintiff to submit to arbitration or, in the alternative, to transfer venue to the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1404. Plaintiff opposes those motions and cross-moves for costs and fees associated with service. Defendants' motions are denied, and plaintiff's cross-motion is granted in part and denied in part.

### Defendants' Motion to Compel Arbitration

Plaintiff, David Ahern ("Ahern"), was recruited and hired to be Regional Sales and Marketing Manager for NTI com-

mencing September 1, 2000. After a series of pre-employment negotiations, Lynch formalized the terms of Ahern's employment in an offer letter dated August 23, 2000. That letter, with attachments, outlined the arrangement between Ahern and NTI.

■ Plaintiff commenced this action, in diversity, alleging wrongful discharge, false representations and fraud in connection with NTI's hiring. In essence, plaintiff claims that the information supplied to him concerning NTI's sales was grossly overstated and misled Ahern to his detriment in accepting the position. The August 23, 2000 two-page employment letter contained several attachments. These are attached as Exhibit "A" to Exhibit "4" of defendants' motion (Dkt. # 4). The attachments include a statement setting forth the job description as well as other papers relating to a summary of employment benefits. In addition, there was a document entitled "Confidentiality and Non Competition Agreement" that Ahern was directed to sign if he accepted the offer of employment. It is this document that is the heart of the dispute concerning the motion to compel arbitration. Defendants contend that this document, which does speak to arbitration, requires that the claims plaintiff raises in the instant lawsuit must be submitted to arbitration. The arbitration clause in pertinent part reads as follows:

> With the exception of the right to seek injunctive relief and relief against third parties pursuant to Section 6.1 of this Agreement, any controversy or claim arising out of or relating to this Agreement, including the making and entering into thereof, shall be subject to final and binding arbitration in Minneapolis, Minnesota, in accordance with the rules of the American Arbitration Association then in effect. . . .

*Id.*, Ex. 4A. In a nutshell, defendants claim that this arbitration provision should be enforced and plaintiff required to arbitrate the claims advanced in this lawsuit. I disagree with that interpretation.

■ First of all, it is clear that defendant NTI prepared the agreement in question and submitted it to Ahern for his signature. There is no evidence that Ahern had any function in preparing the document or in negotiating its terms. It is clear that he was required to sign the document as a condition of his employment. It appears, therefore, that to the extent that there are ambiguities in the contract at issue, they should be interpreted against the maker, NTI. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (it is a "common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it").

■ Plaintiff contends, and I agree, that this agreement to arbitrate is not as broad and expansive as defendants contend. Although I recognize that generally agreements to arbitrate should be broadly construed to effectuate the purpose behind the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, nevertheless, the parties can only be compelled to arbitrate a dispute if in fact they agreed to do so. The necessary inquiry then is whether in fact the parties before the court agreed to arbitrate the dispute contained in this lawsuit. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so"); *State of N.Y. v. Oneida Indian Nation of New York*, 90 F.3d 58, 62 (2d. Cir.1996) (holding that claim was not subject to mandatory arbi-

tration because the parties specifically excluded it from the general arbitration clause); *see also Oldroyd v. Elmira Savings Bank, F.S.B.,* 134 F.3d 72, 75–76 (2d Cir.1998) (first issue to be resolved in deciding a motion to compel arbitration and to stay proceedings pending arbitration is whether the parties agreed to arbitrate).

In my view, this agreement is a narrow agreement to arbitrate certain specific issues and no more. First of all, the agreement itself is styled "Confidentiality and Non Competition Agreement." That title alone suggests a narrow interpretation dealing with two general topics: confidentiality concerning proprietary information and a promise not to compete. I believe a fair reading of that agreement establishes that arbitration related to disputes concerning those matters and nothing more.

It is clear that the employment contract and the agreement to arbitrate could have spelled out more clearly the nature of the disputes to be arbitrated. The agreement at issue here, in my view, covers two discrete topics and cannot be read as requiring all employment disputes of any nature to be submitted to arbitration. I find this to be so even though this separate agreement relating to confidentiality and competition was attached to the original employment letter presented to Ahern.

The basic rudimentary principle concerning arbitration agreements is that the court must be satisfied that the parties entered into such an agreement and that they intended their disputes to be covered by it. Although the Federal Arbitration Act favors arbitration, it cannot be read as compelling individuals to do something that they never intended to do. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. at 478, 109 S.Ct. 1248.

In sum, defendants have failed to convince me that the agreement at issue requires plaintiff to arbitrate the claims involved in this lawsuit and, therefore, defendants' motion is denied.

**Defendants' Motion To Change Venue**

In the alternative, NTI moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of Minnesota. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision whether to grant a transfer under this section is committed to the sound discretion of the district court. *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989). In considering a motion to change venue, the court must consider several well-established factors, including: the plaintiff's choice of forum; the place where the operative facts underlying the action occurred; the convenience and relative means of the parties; the convenience of material witnesses; the availability of process to compel the attendance of unwilling witnesses; the relative ease of access to sources of proof; the forum's familiarity with the governing law; trial efficiency; and the interests of justice. *See Cerasoli v. Xomed, Inc.,* 952 F.Supp. 152, 154 (W.D.N.Y.1997); *Don King Productions, Inc. v. Douglas,* 735 F.Supp. 522, 533 (S.D.N.Y.1990); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

In general, a defendant moving for a change of venue bears the "burden of making out a strong case for a transfer." *Filmline,* 865 F.2d at 521 (quoting *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950)). To prevail on the motion, the movant must make a "clear

showing" that the litigation in the proposed transferee district would be more convenient and would better serve the interests of justice. *Y4 Design Ltd. v. Regensteiner Publishing Enterprises,* 428 F.Supp. 1067, 1070 (S.D.N.Y.1977).

■ After considering all of the foregoing factors, I do not believe that plaintiff's choice of forum should be disturbed here. Neither side disputes the fact that the Western District of New York is a proper district for venue purposes. I am also convinced that plaintiff resides here, that the offer of employment was made here and that at least some of his duties involved activities in the Western District of New York. It is no doubt true that there will be witnesses related to NTI that will need to be deposed and possibly be present at trial, but that is not an uncommon experience in diversity litigation. It appears that NTI's president, Lynch, and plaintiff were the primary actors, although NTI's former CFO Matjaz Korosec and a recruiter, Dianna Rudd, may also be involved.

In many cases involving a proposed change of venue, there are factors which support each side. That is true here. There will be some inconvenience to someone no matter where this action is prosecuted, and I am not convinced that there are sufficient compelling reasons to warrant transferring the case from the district selected by plaintiff. Generally, plaintiff's choice of forum should control. *Iragorri v. United Technologies Corp.,* 274 F.3d 65, 70 (2d Cir.2001); *Guidi v. Inter–Continental Hotels Corp.,* 224 F.3d 142, 146 (2d Cir. 2000); *see also Miceli v. Stromer,* 675 F.Supp. 1559, 1565 (D.Col.1987); *Sorrels Steel Co. v. Great Southwest Corp.,* 651 F.Supp. 623, 628 (S.D.Miss.1986); *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923 (W.D.Mo.1985). Because defendants have failed to carry their burden to make a

"clear showing" that the transferee forum is more convenient under § 1404(a), their motion to transfer is denied.

## Plaintiff's Cross–Motion For Fees and Costs

■ On October 30, 2001, defendants were served with a request for waiver of service of summons pursuant to FED. R.CIV.P. 4(d). The parties do not dispute that defendants failed to return the acknowledgement of receipt of summons and failed to comply with the request for waiver within the time specified in FED.R.CIV.P. 4(d). Plaintiff subsequently served defendants, and now cross-moves for the recovery of $1,845.00 in attorneys' fees and $50.00 in costs related to such service on defendants.

Rule 4(d)(5) provides:

> The costs to be imposed on a defendant ... for failure to comply with a request to waive service of a summons shall include costs subsequently incurred in effecting service ..., together with the costs, including a reasonable attorney's fee, of any motion required to collect the costs of service.

FED.R.CIV.P. 4(d). Notwithstanding defendants' arguments to the contrary, plaintiff is entitled to recover the $50.00 expended on a process server. Plaintiff's request for payment of 16.20 hours of attorney and paralegal time, on the other hand, is unreasonable. Recovery of fees shall be limited to $80.00 for the time expended on December 10, 2001.

## CONCLUSION

Defendants' motion to stay this action and compel arbitration, or, in the alternative, to transfer the action to the District of Minnesota, is denied. Plaintiff's cross-

motion for costs and fees is granted in the amount of $130.00.

IT IS SO ORDERED.